BARBARA C. MANLEY *v.* RALPH A. PFEIFFER, JR., ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued November 15, 1978—decision released January 30, 1979

*William Rossmoore,* with whom was *Samuel J. Murray,* for the appellants (defendants).

*Daniel W. Moger, Jr.,* for the appellee (plaintiff).

Bogdanski, J. The plaintiff, Barbara C. Manley, brought an action against the defendants, Ralph A. Pfeiffer, Jr., and Jane C. Pfeiffer, seeking to enjoin the defendants from constructing and maintaining a fence along the line of an easement over her property. The defendants counterclaimed, seeking (1) an injunction against continuing trespasses by the plaintiff, (2) damages, and (3) a declaratory judgment to determine the rights of the parties in the portion of the plaintiff's property subject to the easement in favor of the defendants. The trial court rendered judgment granting the plaintiff's request for an injunction, denying the relief sought in the defendants' counterclaim and denying the defendants' request for a declaratory judgment. From that judgment the defendants have appealed, assigning error in the court's action (1) in failing to find facts claimed to be admitted or undisputed; (2) in reaching conclusions not supported by the finding; and (3) in overruling their claims of law.

Assignments of error which are not briefed are treated as abandoned. *Pappas* v. *Pappas,* 164 Conn. 242, 243, 320 A.2d 809 (1973). Because the defendants failed to brief their claims of error as to the refusal of the court to find facts claimed to be admitted or undisputed we will treat those claims as abandoned.

The court's finding, which is therefore deemed to be unchallenged, reveals the following facts: The plaintiff and defendants own neighboring properties in Greenwich, Connecticut. The defendants' prop-

erty (hereinafter referred to as Lot A) faces north and fronts on a road, while the plaintiff's property (hereinafter referred to as Lot B) is located behind the defendants' property and is reached from the road by a driveway. The "front" of the plaintiff's lot faces the "back" of the defendants' lot while the back of the plaintiff's lot borders on Long Island Sound to the south.

Both parties took title from Francis M. Gerli, the prior owner of both Lots A and B. The deed from Gerli to the defendants conveying Lot A was first, being dated and recorded on September 11, 1975. The deed provided that the defendants were to have "an exclusive easement" over a designated portion of Lot B, as well as "the exclusive right to the use of the dock adjacent to the easement area." The deed also provided that the grantee (the defendants) had "the affirmative obligation to keep the grassy area in which the Grantee has said right of easement cut and maintained, and shall further have the affirmative obligation to maintain the septic system or fields located within the easement area and serving Lot A." Elsewhere the deed provided: "The portion of Lot B on said map dated July 25, 1975, which is subject to the easement of the Grantee shall be maintained as a grassy area and neither the Grantor nor the Grantee without the permission of the other shall construct any improvements upon said portion of Lot B."

A little over a month later Gerli conveyed title to Lot B to the plaintiff. This deed provided that the plaintiff acquired "[a]ll the rights, privileges and benefits retained by or accruing to the benefit of the Grantor [Gerli]" in the deed to the defendants but "subject nevertheless to restrictive covenants,

agreements and provisions binding upon the Grantor" in the earlier deed. In the course of trial, Barbara Manley testified that the purchase price of Lot B was $225,000 and that she had obtained a mortgage in the amount of $80,000 from a Stamford bank in connection therewith.

In late November or early December of 1976, the defendants had a fence built along the northerly and easterly boundaries of their property. This fence, of wooden rail construction, continued across the plaintiff's property along the area subject to the exclusive easement held by the defendants. At no time did the defendants obtain permission from the plaintiff to build the fence.

The trial court found that the fence constituted an "improvement" within the meaning of the Gerli deed and that the erection of the fence was illegal. The court refused, however, to issue a declaratory judgment on the ground that the parties had failed to join all persons having an interest in the subject matter of the suit, i.e., mortgagees, as required by § 309 (d) of the 1963 Practice Book.

In their appeal the defendants claim that the court erred (1) in finding that the fence was illegal; (2) in granting an injunction in the absence of a showing of irreparable harm; (3) in refusing to render a declaratory judgment; and (4) in denying the defendants' counterclaim.

Any and all rights which the defendants have in the plaintiff's property are derived from the Gerli deed of September 11, 1975. That deed, by its terms, expressly made the defendants' rights subject to certain express limitations and conditions, i.e., that the easement area must be maintained as a grassy area

and that no improvements shall be constructed without the permission of the owners of Lot B. In effect, the deed provides that any departure from a grassy condition as to the easement area requires mutual consent.

In Black's Law Dictionary an "improvement" is defined as "[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement of waste, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." The possible problem engendered by the subjective, qualitative dimension of the definition of the term "improvement," i.e., whether a given change or addition does, in fact, enhance the value, beauty or utility of the property, is obviated in this case by the requirement in the deed of mutual consent. As used in this deed the word "improvement" means, in effect, that any departure from the natural grassy condition of the easement area, whether or not for the better, requires mutual consent. We conclude, therefore, that the court did not err in finding that the fence was an "improvement" or in concluding that the construction of the fence, without the permission of the plaintiff, was improper.

The defendants' next claim, that the court erred in issuing an injunction in the absence of a finding of irreparable injury to the plaintiff, is without merit. The trial court, relying on *Hartford Electric Light Co.* v. *Levitz,* 173 Conn. 15, 376 A.2d 381 (1977), properly issued the sought for injunction. In *Hartford Electric Light Co.* v. *Levitz,* this court stated (p. 22) that "[a] restrictive covenant may be enforced by injunction without a showing that viola-

tion of the covenant will cause harm to the plaintiff, so long as such relief is not inequitable." In that decision this court also went on to note that whether the restrictive covenant sought to be enforced arose in connection with a conveyance of property in fee or with a conveyance of an easement was immaterial. Under these circumstances, there was no need for a showing of irreparable harm.

We also conclude that the trial court did not err in refusing to render a declaratory judgment. Section 309 of the 1963 Practice Book provides that "[t]he court will not render declaratory judgments upon the complaint of any person . . . (d) unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." A failure to comply with § 309 (d) is a jurisdictional defect and, as such, can be raised even on appeal by the court itself. See *Manafort Bros., Inc.* v. *Kerrigan,* 154 Conn. 112, 114, 222 A.2d 218 (1966). Section 309 (d) has been held to apply to declaratory judgment actions in which a declaration as to a deed restriction is sought and holders of encumbrances on the property in question are absent. *Sloane-Wheeler Corporation* v. *Odiseos,* 154 Conn. 705, 226 A.2d 508 (1967).

The court found evidence in the record indicating the existence of at least one mortgagee, if not more, and ruled that the failure of the parties to join the mortgagees precluded the court from rendering judgment. The request by the defendants, after both parties had rested their cases, for leave to join additional parties was untimely. It was, therefore, well within the trial court's discretion to deny such a request.

With respect to the defendants' claim of error as to their counterclaim, the record reveals that the defendants failed both to plead damages and to offer evidence as to damages. Under these circumstances, their claim that the court erred in refusing to award damages lacks merit.

Moreover, because of the jurisdictional defect in the declaratory judgment claim, the trial court never undertook to rule as to the meaning of the term "exclusive easement." The court never dealt with the question of whether the word "exclusive" was intended to exclude the owner of the fee from the easement, or to limit the defendants' use of the easement to themselves. Without resolving that question, the court had no basis for concluding that the plaintiff's entry onto the portion of her property subject to the defendants' "exclusive easement" over it impinged on the defendants' easement.[1] In consequence there was no basis upon which damages could have been predicated. The court cannot therefore be said to have erred in refusing to award damages to the defendants.

There is no error.

In this opinion the other judges concurred.

---

[1] The question is certainly not free from doubt. If the intention of the grantor was that the owner of Lot B not set foot upon the portion of her property subject to the exclusive easement in favor of the owners of Lot A, why does the restrictive covenant provide that *neither* party shall construct any improvements without the permission of the other?