GORDON B. MANNWEILER ET AL. *v.* ROBERT S.
LAFLAMME ET AL.
(15009)

CALLAHAN, BORDEN, BERDON, NORCOTT and PALMER, Js.

Argued November 3, 1994—decision released January 31, 1995

*Edward G. Fitzpatrick*, with whom was *Jayne Elser Welch*, for the appellants (plaintiffs).

*Vincent T. McManus, Jr.*, for the appellees (defendants).

NORCOTT, J. In this action for a declaratory judgment and for other relief, the plaintiffs appeal from the judgment of the trial court rendered in favor of the defendants. The plaintiffs claim that the trial court improperly:

(1) found that there was a common scheme of development; (2) concluded that a purported revocation of the right to restrict certain development was valid; and (3) concluded that the plaintiffs were not entitled to enforce certain restrictive covenants. We conclude that the trial court lacked subject matter jurisdiction because certain indispensable parties had not been given notice pursuant to Practice Book § 350 (d). Accordingly, we reverse the judgment of the trial court and remand the case to that court for further proceedings.

In 1927, the J. H. Whittemore Company (Whittemore) had recorded in the Naugatuck land records a subdivision map of a tract of land known as the Hop Brook development (Hop Brook), which consisted of six sections divided into fifty-two lots that were delineated on the subdivision map. The parties[1] in the present case are all owners of property within the development and all derive their title from Whittemore, the common grantor. In May, 1991, the defendants received approval from the Naugatuck planning and zoning commission to subdivide their property and to construct two additional homes in addition to the single residence that already existed on their lot.

Thereafter, the plaintiffs instituted this action seeking injunctive and declaratory relief to prevent the defendants from constructing additional dwellings on their resubdivided parcel. In commencing their action, the plaintiffs served only the defendants and sought no order of notice. The plaintiffs alleged that Whittemore had created, by restrictive covenant, a uniform plan of development, or "common scheme," limiting any development within Hop Brook to one residential

---

[1] The plaintiffs, Gordon B. Mannweiler, Arminda P. Murtha and William G. Boies, each own lots within Hop Brook. The defendants, Robert S. LaFlamme, Charles E. LaFlamme, Sr., David Apicella and John J. Carroll, are joint owners of a single parcel in the development.

dwelling per lot,[2] to which all subsequent conveyances were subject. The plaintiffs claimed that the restrictive covenant precluded any further subdivision and the erection of additional houses on the defendants' parcel.

At trial, the defendants contended that the language of the covenant relied on by the plaintiffs does not prohibit the resubdivision of their lot but, rather, expressly permits it. In support of this argument, the defendants pointed to their own deed that contains, in addition to the restrictions in footnote 2, language that evinces Whittemore's 1937 attempt to revoke or amend Hop Brook's restrictive covenants in a deed to Lewis A. Dibble. Dibble is the defendants' predecessor in title.[3] Fur-

[2] Each deed within Hop Brook contained a similar covenant. For example, the first lot conveyed out of the Hop Brook subdivision was a warranty deed from Whittemore to Howard H. Bristol dated September 28, 1927. That deed contained the following language: "This conveyance is made subject to the following covenants and restrictions and the said Grantee, his heirs and assigns, by the acceptance of this deed, assents and agrees to take the said premises subject thereto:

"1. The aforesaid premises shall be occupied and used by the Grantee, his heirs and assigns, for private residential purposes only and not otherwise, and there shall at no time be erected or maintained thereon anything except one private residence for the use of one family only, which private residence shall cost, exclusive of the land not less than $15,000.00, together with the necessary outbuildings appurtenant thereto. . . .

"3. Each and all the foregoing covenants and restrictions are for the mutual benefit of all persons who have derived or who shall derive title, directly or indirectly from the Grantor to any lot or lots shown on the Map hereinbefore referred to, and shall run with the land in favor of all lots shown on said Map, and any breach or threatened breach of any one or more or all of the covenants and restrictions aforesaid may be enjoined upon application of the Grantor, its successors and assigns, or any person or persons who have derived or shall derive title directly or indirectly from the Grantor to any lot or lots shown on said map."

[3] The deed to Dibble, dated August 6, 1937, contained the following language: "4. It is particularly agreed and understood that should the Grantee, his heirs or assigns, purchase further lands from the Grantor, or its successors, within Block 'E,' as shown on said Map, the foregoing covenants and restrictions may be revoked, in whole or in part, and others substituted therefor, by an agreement entered into by and between the Grantor, or its successors, and the Grantee, or his heirs or assigns, alone, and without the consent of any other person or persons."

ther, they cited a 1946 warranty deed from Whittemore to Dibble, wherein Whittemore attempted to revoke completely the restrictive covenants and to permit resubdivision by the grantee of four lots in section E of the subdivision.[4]

After a trial, the court concluded that the original grantor's intention as to the general plan or common scheme was to develop a residential area of single-family homes. The court also found, however, that the plan did not restrict the resubdivision of the defendants' lot. Accordingly, the court rendered judgment for the defendants. The plaintiffs appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The substantive issues in this appeal are whether the trial court properly: (1) concluded that, although a common scheme of development exists, the language of the restrictive covenant does not constitute an enforceable restriction on the number of dwellings that may be constructed on any one lot; (2) declined to declare that the attempted reservation of the right to revoke the restrictive covenants by the original grantor in 1937, and the subsequent revocation in 1946, without consent of all the prior grantees, was void and of no effect; and (3) concluded that the plaintiffs were not entitled to enforce the terms of the restrictive covenants. Because

---

[4] The restrictive language in the 1946 deed is as follows: "2. Said premises may be re-subdivided into building lots of dimensions other than those shown on said Map, provided, however, that no lot shall have a street frontage of less than 100 feet nor a total area of less than 15,000 square feet. On any such lot, or on the original lots if not re-subdivided, no house or outbuildings, including garage, stable, or any other structure, or any part or portion thereof, including p[or]ches, steps, porte cochere, bay windows, and any and all projections therefrom, shall be at any time erected or placed nearer to the front or sidewalk lines of any such lot than forty feet, nor nearer to the side line of any such lot than twenty feet or, where such lot sides upon a street, nearer than forty feet to such side or sidewalk line."

we conclude that the record discloses a fundamental flaw in the proceedings that deprived the trial court of subject matter jurisdiction, we reverse the trial court's judgment and do not reach the merits of the appeal. See *Serrani* v. *Board of Ethics*, 225 Conn. 305, 306, 622 A.2d 1009 (1993).

The parties concede that the plaintiffs' amended complaint sought both injunctive and declaratory relief.[5] Although the plaintiffs assert that the case was tried to and resolved by the trial court only on the basis of an injunction and that the claim for declaratory judgment was only "ancillary" to the proceedings, our review of the record does not support their contention. Neither the trial court's memorandum of decision nor the judgment file indicates that the declaratory judgment aspect of this case was not determined by the trial court.[6] Indeed, the pertinent part of the trial court's memorandum of decision sounds very much like the resolution of the declaratory judgment issue regarding a common scheme.[7] We conclude, therefore, that the trial court considered and denied the declaratory relief sought.

[5] The plaintiffs' amended complaint expressly sought, in part, a declaratory judgment, requesting: "6. A declaratory judgment determining whether or not additional residency can be constructed on the subject property, which is shown as Lot 1 in Section E on the Map and Plot recorded in Map Book 3, Page 1 of the Naugatuck Land Records."

[6] It is unclear from the trial court's memorandum of decision whether it ruled separately on the claims for injunctive and declaratory relief. After discussing the question of a common scheme, the court concluded by stating: "Judgment is entered for the defendants." The judgment file also is not instructive, as it merely reads: "The court, having heard the parties, finds the issues in favor of the defendants." Pursuant to Practice Book § 4061, "[i]t is the responsibility of the appellant to provide an adequate record for review." Neither party sought articulation, pursuant to Practice Book § 4051, of the trial court's memorandum of decision to clarify this issue and to preserve properly the issue for appeal.

[7] The pertinent language of the trial court's memorandum of decision states: "From all of the evidence regarding the conveyances at issue here, it is the conclusion of the court that the grantor's intention as to the gen-

In order for a trial court to have jurisdiction over declaratory judgment actions, however, it must comply with the notice requirement of Practice Book § 390 (d), which provides: "The court will not render declaratory judgments upon the complaint of any person . . . (d) unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." After a thorough examination of the record, we are persuaded that the presence of all of the lot owners in Hop Brook is indispensable to a determination of the issues upon the merits and that they were entitled to notice of the underlying action.[8]

"Parties have been termed indispensable when their interest in the controversy is such that a final decree cannot be made without either affecting that interest or leaving the controversy in such condition that its final disposition may be inconsistent with equity and good conscience.[9] *Sturman* v. *Socha*, 191 Conn. 1, 6,

---

eral plan or scheme was one of developing a residential area of single family homes, but that it was not part of the general plan or scheme to restrict the subdivision of the defendant's lots except as described in the defendant's deeds. This is further supported by the language in each deed which states that 'each and all of the foregoing covenants and restrictions' in the deed are enforceable against subsequent grantees and assigns of the same property. It is not a fair reading of such language to suggest that it means that the restrictions contained in one deed are to be construed as applicable not solely to the property described in that deed, but to other property which may also have once been owned by a common grantor."

[8] At oral argument, the plaintiffs' suggested that a newspaper article relating to the defendants' proposed subdivision satisfied the notice requirement of Practice Book § 390 (d). We find no merit to this claim.

[9] The rule requiring joinder of all necessary parties is not inflexible. As this court stated in *National Transportation Co.* v. *Toquet*, 123 Conn. 468, 484, 196 A. 344 (1937): "Under our rule all such persons even though their presence is not necessary to a decision of the issues between the parties of record are required either to be made parties or to have reasonable notice of the action. Where they are reasonably within the reach of process and are not so numerous that it would impose an unreasonable burden upon the plaintiff they should be made parties; but if they or some of them are not reasonably available for service or to summon them or all of them into

463 A.2d 527 (1983); *Standard Mattress Co.* v. *Hartford*, 31 Conn. Sup. 279, 288, 329 A.2d 613 (1974)." *Gaudio* v. *Gaudio*, 23 Conn. App. 287, 305–306, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990); see also *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 439, 572 A.2d 951 (1990). Joinder of indispensable parties is mandated because due process principles make it "essential that [such parties] be given notice and an opportunity to protect [their] interests by making [them] a party to the [action]." *Fong* v. *Planning & Zoning Board of Appeals*, 212 Conn. 628, 634, 563 A.2d 293 (1989). The unnoticed lot owners within Hop Brook are classic "indispensable parties" because the resolution of the questions regarding the restrictive covenants and the alleged common scheme of development are relevant to *all* deeds within the development. See *Tri-Mor Bowl, Inc.* v. *Brunswick Corp.*, 366 N.E.2d 941 (Ill. App. 1977); *Garnick* v. *Serewitch*, 39 N.J. Super. 486, 121 A.2d 423 (Ch. Div. 1956); see also T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) pp. 621–24.

"The purpose of a declaratory judgment action . . . is to 'secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties' "; *Wilson* v. *Kelley*, 224 Conn. 110, 115, 617 A.2d 433 (1992), quoting *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, 199 Conn. 609, 613, 508 A.2d 743 (1986); and to make certain that the declaration will conclusively settle the whole controversy. See *National Transportation Co.* v. *Toquet*, 123 Conn. 468, 481–84, 196 A. 344 (1937). " 'This rule is not merely a procedural regulation. It is in recognition and implementa-

the action would put upon the plaintiff a burden he ought not fairly to be asked to assume, the provision for reasonable notice applies. The plaintiff may often accomplish the purpose intended by . . . securing authority from the court for them to defend in behalf of all."

tion of the basic principle that due process of law requires that the rights of no [person] shall be judicially determined without affording him [or her] a day in court and an opportunity to be heard.' " *Kolenberg* v. *Board of Education*, 206 Conn. 113, 124, 536 A.2d 577, cert. denied, 487 U.S. 1236, 108 S. Ct. 2903, 101 L. Ed. 2d 935 (1988). Disposition of this case without the presence of all of the lot owners could lead to unacceptable results. For example, the question of whether a common scheme exists could be relitigated in multiple actions by persons not bound by the first declaration. See E. Borchard, Declaratory Judgments (2d Ed. 1941) p. 256. Thus, because adjudication of the declaratory judgment claim necessarily implicates the interests of every other lot owner within the development, each must be given notice and an opportunity to be heard.

This case is analogous to *Sloane-Wheeler Corp.* v. *Odiseos*, 154 Conn. 705, 226 A.2d 508 (1967), in which this court dismissed an action for declaratory judgment for lack of jurisdiction because not all of the landowners in a forty acre tract were represented in the action to adjudicate whether building and use restrictions contained in each parcel's deed were enforceable. The court concluded that "[t]he record fails to disclose that the plaintiffs sustained their burden of proving that all persons having any interest in the removal of the deed restrictions on the lots [in the tract] either were made parties to the action or have had reasonable notice thereof." Id., 707.

Since, in this case, the plaintiffs, in their prayer for relief, invoked the declaratory judgment provision of General Statutes § 52-29, as implemented by Practice Book §§ 389 and 390, a proper order of notice to all parties having an interest in the subject matter of the complaint was mandatory. See *Serrani* v. *Board of Ethics*, supra, 225 Conn. 308. "Failure to comply with § 390 (d) deprives the trial court of subject matter juris-

diction to render a declaratory judgment. See, e.g., *Connecticut Ins. Guaranty Assn.* v. *Raymark Corp.*, 215 Conn. 224, 229, 575 A.2d 693 (1990); *Benz* v. *Walker*, 154 Conn. 74, 77, 221 A.2d 841 (1966). [J]urisdiction of the subject matter is a question of law and cannot be waived or conferred by consent either in the trial court or here. . . . Once brought to the attention of the court, regardless of the form of the motion, it must be acted upon. . . . *In re Judicial Inquiry No. 85-01*, 221 Conn. 625, 629, 605 A.2d 545 (1992); Practice Book §§ 143, 145." (Internal quotation marks omitted.) *Serrani* v. *Board of Ethics*, supra, 308. "We have consistently stressed that strict observance of this jurisdictional requirement is necessary." *Sloane-Wheeler Corp.* v. *Odiseos*, supra, 154 Conn. 707. Accordingly, the lack of notice, pursuant to Practice Book § 390 (d), to the other owners in the subdivision is a fatal flaw that deprived the trial court of jurisdiction. *Kolenberg* v. *Board of Education*, supra, 206 Conn. 124.

Furthermore, our concern with the provision of proper notice to all parties with an interest in property subject to the deed restrictions at issue applies with equal force to the plaintiffs' claim for injunctive relief, at least in a case such as this where it is accompanied by a claim for a declaratory judgment. The plaintiffs' claims for injunctive and declaratory relief both rise or fall on the interpretation of the deeds at issue in the case and are, therefore, inexorably intertwined.[10]

---

[10] In *Manley* v. *Pfeiffer*, 176 Conn. 540, 544–45, 409 A.2d 1009 (1979), this court affirmed a trial court judgment that had granted injunctive relief, even though the trial court had lacked jurisdiction to rule on the request for declaratory judgment because proper notice had not been afforded to all interested parties. Although in *Manley* this court did not explicitly consider whether the trial court had jurisdiction to hear the request for an injunction, our holding implied that the trial court had been competent to hear this claim. That implication is incorrect. Had we considered that issue, as we do in this case, we would have concluded that a trial court lacks jurisdiction to rule on a request for injunctive relief when that relief depends

Because to decide one claim is to decide the other, reaching the merits of the claim for injunctive relief—which in this case is essentially just the procedural method for enforcement of the declaratory judgment—through an artificial severance of the claim for declaratory relief would lead to the same multiplicity of litigation that would arise were we to address the declaratory judgment on its merits. The interests of judicial economy and fairness that require the plaintiffs in a declaratory judgment action to give notice to all interested parties militate against our deciding the fundamental issue underlying that cause of action under another name.

The trial court's lack of subject matter jurisdiction here, however, does not require a dismissal on remand. We have recently held that "[u]nlike other jurisdictional defects implicating the trial court's subject matter jurisdiction . . . the bringing of a declaratory judgment action is not itself precluded by a failure to comply with the notice requirement." *Serrani* v. *Board of Ethics*, supra, 225 Conn. 309 n.5; *Connecticut Ins. Guaranty Assn.* v. *Raymark Corp.*, supra, 215 Conn. 230. On remand, the plaintiffs may pursue further procedural efforts to cure the jurisdictional defect regarding the notice requirement. *Serrani* v. *Board of Ethics*, supra, 309.[11]

---

on a de facto declaratory judgment as to the rights of interested parties who have not been given proper notice. We therefore overrule anything in *Manley* to the contrary.

[11] Once the notice to the other property owners has been given pursuant to Practice Book § 390 (d), several procedural paths are possible. If any such owner joins as a party and objects to the judgment already rendered, the case must be retried ab initio, so that the new party has a full opportunity to participate therein. Of course, to the extent that the parties agree, the record of the first trial may be incorporated into and made the record of the new trial. If, however, such owner joins but does not request such a new trial or if no such owner joins as a party, the trial court, after giving the parties the opportunity to be heard, will be free either (1) to reissue the decision and rerender its original judgment, or (2) proceed to hear the case anew if it entertains doubt about the original judgment.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

In this opinion CALLAHAN, BORDEN and PALMER, Js., concurred.

BERDON, J., dissenting. I agree that if this case were simply one in which the plaintiffs had sought only a declaratory judgment, this court could dispose of it in a one page per curiam decision because the plaintiffs failed to give notice to all interested parties pursuant to Practice Book § 390 (d).[1] The failure of interested parties to have notice of such litigation, of course, deprives this court of subject matter jurisdiction to rule on that form of relief. In this case, however, the plaintiffs did not seek only declaratory relief. Rather, the plaintiffs sought primarily injunctive relief, and this court should recognize that fact and issue a ruling on the substantive merits of the plaintiffs' case.

The plaintiffs brought this action to enforce restrictive covenants in their property deeds and to prevent the resubdivision of the original subdivision. In their original seven paragraph prayer for relief, dated July 18, 1990, the plaintiffs asked the court for three different temporary and permanent injunctions, monetary damages, punitive damages and attorney's fees. During the next thirteen months, the plaintiffs amended their complaint three times. Only in the final

---

[1] Practice Book § 390 provides: "The court will not render declaratory judgments upon the complaint of any person: (a) unless he has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to his rights or other jural relations; or (b) unless there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; or (c) where the court shall be of the opinion that the parties should be left to seek redress by some other form of procedure; or (d) unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof."

amended complaint, dated August 12, 1991, did the plaintiffs amend their prayer for relief to add a request for a declaratory judgment.[2]

This court has considered the availability of both injunctions and declaratory judgments as a means of enforcing restrictive covenants in a deed. We have recognized that a trial court may issue an injunction in order to enforce such restrictions. *Manley* v. *Pfeiffer,* 176 Conn. 540, 544, 409 A.2d 1009 (1979); *Hartford Electric Light Co.* v. *Levitz,* 173 Conn. 15, 22, 376 A.2d 381 (1977). Similarly, we have held that a trial court may grant a declaratory judgment to determine the validity of these restrictions; *Fidelity Title & Trust Co.* v. *Lomas & Nettleton Co.,* 125 Conn. 373, 375, 5 A.2d 700 (1925); provided, however, that the party seeking the declaratory judgment has complied with the Prac-

---

[2] The plaintiffs' final amended prayer for relief provides as follows:

"WHEREFORE, the Plaintiffs claim:

"1. Monetary damages.

"2. Attorneys fees and costs for the bringing of this action.

"3. Punitive damages in Counts Second, Fourth and Sixth.

"4. An injunction, both temporary and permanent, restraining the Defendants and their agents, servants, employees and other acting under their direction and authority from any further development of existing structure on their property in violation of the deed restrictions and covenants.

"5. An injunction, both temporary and permanent, restraining the Defendants and their agents, servants, employees and others acting under their direction and authority from constructing any other building or structure on their property in violation of the deed restrictions and covenants.

"6. An injunction, both temporary and permanent, restraining the Defendants and their agents, servants, employe[e]s and others acting under their direction and authority from subdividing said property in violation of the deed restrictions and covenants.

"*[7.] A declaratory judgment determining whether or not additional residency can be constructed on the subject property, which is shown as Lot 1 in Section E on the Map and Plot recorded in Map Book 3, Page 1 of the Naugatuck Land Records. (See Exhibit A).*

"[8.] The amount of money damages claimed exclusive of interest and costs is not less than Fifteen Thousand and 00/100 ($15,000.00) Dollars." (Emphasis added.)

tice Book requirements for obtaining it,[3] including joining as parties or providing notice of the litigation to all interested persons. *Sloane-Wheeler Corp.* v. *Odiseos*, 154 Conn. 705, 707, 226 A.2d 508 (1967). Where a plaintiff seeks both types of relief, the trial court may rule on the request for an injunction even if the plaintiff's request for a declaratory judgment must be rejected because the plaintiff failed to comply with the Practice Book requirements. *Manley* v. *Pfeiffer*, supra, 544–45.[4] In other words, the defects in a plaintiff's request for a declaratory judgment do not deprive the court of its authority or its jurisdiction to rule on his or her request for equitable relief.

In order for the majority to reverse the trial court without reaching the merits of this case, therefore, it is not sufficient to show merely that the trial court ruled on the issue of the declaratory judgment. The majority must also demonstrate that the trial court did *not* rule on the plaintiffs' request for injunctive relief. This the majority cannot do. The pleadings, the procedural history of this case, and the trial court's memorandum of

---

[3] See footnote 1 for the text of Practice Book § 390.

[4] The opinion of this court in *Manley* v. *Pfeiffer*, supra, 176 Conn. 540, does not make clear that the plaintiff had sought both injunctive relief and declaratory relief. The opinion correctly notes that the trial court had denied the declaratory judgment "on the ground that the *parties* had failed to join all persons having an interest in the subject matter of the suit . . . ." (Emphasis added.) Id., 543. The opinion, however, also seems to suggest that only the defendants had sought the declaratory judgment. Id., 541.

The record in that case, however, removes any doubt that the plaintiff, as well as the defendants, had sought both injunctive relief and declaratory relief. In her pleadings, the plaintiff stated that she "joins in seeking a declaratory judgment and asks that the Court enter judgment declaring that she has the right to use the so called easement area of her land." *Manley* v. *Pfeiffer*, Conn. Supreme Court Records & Briefs, Nov. Term, 1978, Pt. 2, Record, p. 14. The decision of the trial court, moreover, stated that "[b]oth parties seek a declaratory judgment as to their rights and legal relations with respect to the permanent exclusive easement parcel of land." Id., p. 15.

decision all indicate that the plaintiffs' requests for injunctions were before the trial court and that the trial court predicated its ruling only on them.[5]

First, there is nothing in the complaint or in the prayers for relief that would narrow the plaintiffs' claims solely to a request for a declaratory judgment. On the contrary, the complaint makes perfectly clear that the plaintiffs sought primarily equitable relief, rather than a declaratory judgment. As I previously indicated, three paragraphs in the prayer for relief requested the court to grant "[a]n injunction, both temporary and permanent," to restrain the defendants in the use of their property. The plaintiffs' decision to amend their complaint to include a request for declaratory judgment does not alter the fact that the complaint sought primarily injunctive relief.

---

[5] The majority's reliance on *Sloane-Wheeler Corp.* v. *Odiseos*, supra, 154 Conn. 707, is misplaced. Although the complaint in that case included requests for both declaratory relief and injunctive relief, the trial court clearly granted *solely a declaratory judgment* as follows:

"1. Judgment may enter for the plaintiff Sloane-Wheeler Corporation relieving its property located in Greenwich and identified as lots 9, 10, 11 on a development map entitled 'The Maples' dated March 5, 1906 and on file in the Town Clerk's office in Greenwich, numbered Map 268, from all restrictive covenants attached to or imposed upon its lots.

"2. Judgment may enter for the plaintiff Byfield Holmes, Inc. relieving its property identified as the northeast one half of lot #22 on said map of 'The Maples' from all restrictive covenants attached to or imposed upon the lot.

"3. Judgment may enter for the plaintiff Preferred Properties Incorporated relieving its property identified as lot #23 on said map of 'The Maples' from all restrictive covenants attached to or imposed upon its lot.

"4. Judgment may enter for the plaintiff Dorothy M. Lindstedt relieving her property identified as the south one half of Lot No. 13, and all of Lot No. 14 on said map of 'The Maples' from all restrictive covenants attached to or imposed upon the lots." *Sloane-Wheeler Corp.* v. *Odiseos*, Conn. Supreme Court Records & Briefs, Nov. Term, 1966, Record, p. 19. The trial court's decision on the declaratory judgment, therefore, was the only issue before this court. Because the plaintiff had failed to provide notice to all interested parties, we correctly held that this court did not have subject matter jurisdiction.

Second, the trial court previously had granted the plaintiffs' motion for a temporary injunction. The issue of whether to convert that temporary injunction into a permanent one therefore was ripe for review and before the court.

Third, the trial court's own memorandum of decision and the judgment file indicate that the court was deciding the issue of injunctive relief. On the first page of its memorandum of decision, the trial court stated that it understood the central issue to be whether provisions in the deeds of the defendants are "void and *subject to injunction by the court.*" (Emphasis added.) Indeed, the trial court never once mentioned declaratory relief or declaratory judgment or used any language that can be connected even tangentially to the grant or denial of a declaratory judgment. Furthermore, one of the principal cases relied on by the trial court involved a property owner who sought injunctive relief rather than a declaratory judgment. See *Contegni* v. *Payne*, 18 Conn. App. 47, 557 A.2d 122, cert. denied, 211 Conn. 806, 559 A.2d 1140 (1989). Finally, the judgment file indicates that the trial court had ruled on an "action, by writ and complaint claiming damages *and injunctive relief*, and later a declaratory judgment . . . ." (Emphasis added.) Importantly, neither the plaintiffs nor the defendants claim that the trial court limited its ruling to the request for a declaratory judgment.[6]

Given these undisputed facts, the majority cannot rationally conclude that the trial court's decision did not concern the plaintiffs' request for injunctive relief. Furthermore, even if the trial court's decision can be

---

[6] Indeed, neither the plaintiffs nor the defendants claim that the plaintiffs' request for a declaratory judgment operated to deprive courts of subject matter jurisdiction over this case. Instead, this court raised the issue of subject matter jurisdiction for the first time when it asked the parties to file supplemental briefs on the issue. All parties, in fact, agree that we have jurisdiction and should decide this case on the merits.

construed as denying both injunctive and declaratory relief, we would still have jurisdiction to determine the validity of the trial court's denial of the injunctive relief. Accordingly, the majority cannot simply remand this case to the trial court without first reaching the merits of that court's decision and ruling on the substantive issues, which have been fully briefed by the parties.

Finally, the majority's veiled suggestion that the notice requirements of Practice Book § 390 (d) apply "with equal force to the plaintiffs' claim for injunctive relief" muddles not only the remand in this case, but also the state of the law on the proper means to enforce restrictive covenants.[7] The plaintiffs in such a case would, on remand, simply withdraw their request for a declaratory judgment and then, if the parties agreed, the appeal could be refiled. See *Serrani* v. *Board of Ethics*, 225 Conn. 305, 310–14, 622 A.2d 1009 (1993) (*Berdon, J.,* dissenting).[8] The majority's comments, however, greatly confuse the issue. If the majority is now layering a notice requirement on an action brought for injunctive relief, the opinion should say so. If the majority is overruling *Hartford Electric Light Co.* v. *Levitz,* supra, 173 Conn. 15, in which this court held that a property owner may enforce a restrictive covenant by seeking an injunction, the opinion should say so. If the majority is overruling *Manley* v. *Pfeiffer,* supra, 176 Conn. 540, in which this court held that a trial court may rule on a request for an injunction even

---

[7] The majority contends that reaching the merits of the claim for injunctive relief would lead to a "multiplicity of litigation." It is true, as the majority recognizes, that the trial court's grant or denial of injunctive relief based upon the alleged restrictive covenants would not be res judicata for property owners who were not a party to this litigation. It is likely, however, that the parties now before the court are the only ones interested in the issue.

[8] Although this perfunctory act would satisfy the majority of the court, I am sure that the parties would be concerned about the additional delay and expense. Furthermore, dismissal of the appeal certainly does not advance the administration of justice.

if the plaintiff's request for a declaratory judgment fails for want of proper notice to interested parties, the opinion should say so.[9] Finally, if the majority is now holding that, when more than one property owner is affected, the validity of a restrictive covenant can be determined only by a declaratory judgment, the opinion should say so. This court has an obligation to the practicing attorneys in this state to explain what the law is when we have an issue squarely before us.

Accordingly, I would reach the substantive issues in this case. I, therefore, respectfully dissent.

---

[9] Footnote 10 of the court's opinion, in which the majority contends that it is, in fact, overruling a portion of our holding in *Manley*, sets the stage for unusual distinctions among plaintiffs who seek various forms of judicial relief. The majority seems to suggest that if a plaintiff brings an action for an injunction to restrain a violation of a restrictive covenant and for a judgment declaring the rights of the parties with respect to the covenant, a court would not have jurisdiction to rule on the request for injunctive relief if the plaintiff had failed to satisfy the notice requirements for the declaratory judgment.

On the other hand, however, the majority does not dispute that a court has jurisdiction to rule on that same plaintiff's request for an injunction if it is contained in a complaint that does *not* also seek a declaratory judgment. Similarly, the majority does not dispute that a court has jurisdiction to rule on that same plaintiff's request for an injunction if, before or after judgment, the plaintiff withdraws a request for a declaratory judgment.

I am unable to understand why a court would not have jurisdiction over the injunctive issue in all of these situations. After all, the particular elements that a plaintiff must prove in order to win an injunction are identical in each of the three situations. In each of the three situations the parties occupy exactly the same positions and carry exactly the same burdens. Finally, there is nothing in this case or in *Manley* to suggest, as the majority states, that the injunctive relief sought by the plaintiff "depend[ed] on a de facto declaratory judgment as to the rights of interested parties who have not been given proper notice." Neither party argues this. Rather, this is simply a case where the court on its own has conjured a problem of subject matter jurisdiction that, in fact, does not exist.