[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has filed this action asking for a temporary and permanent injunction and for a declaratory judgment regarding a claimed easement over adjoining land. The defendant owner of the land over which the plaintiff claims an easement opposes such relief.
The matter was first presented to the court at a hearing on the plaintiff's application for temporary injunction. After the presentation of evidence at the temporary injunction phase, the parties stipulated that the trial on the temporary injunction could be considered to be a trial on the merits so that the order entered could be a final judgment. CT Page 5265
For reasons that follow, the court finds in favor of the plaintiff and enters temporary relief but declines to enter judgment, pending further notice to interested parties.
FACTS
The plaintiff Kathleen Faught and the defendant Edgewood Corners, Inc., own adjoining real property in New Haven. The plaintiff owns two parcels with buildings that front on Whalley Avenue, #374 and #372. Next door is the property recently acquired by the defendant at #376-386 Whalley Avenue. The latter parcel has a building fronting Whalley Avenue. Behind the building is a large parking area that rums along Norton Street ("the Norton Street lot"). Two curb cuts allow entry from Norton Street into the large parking lot.
The history of the properties over the last half century is instructive. The plaintiff's predecessors in title are Max and Yale Greenburg, brothers who owned both #374 and #372 Whalley Avenue. The building at #374 had been owned by their father who opened a tailor shop on the first floor before World War II. Shortly after the war,
Max and Yale Greenburg bought #372 and used it as a furniture store which they operated for many years.
The plaintiff began living at #374 as a tenant in 1979. In 1984, she bought that property from the Greenburg family. In 1998, she bought #372.
In the rear of #374, there is room to park several cars ("the #374 lot"). During all the time that the elder Mr. Greenburg owned and operated the tailor shop, he used the area behind the building at #374 to park cars. The brothers routinely parked their cars in the space at #374 during the time they owned and operated the furniture store at #372. While the plaintiff was a tenant at #374 before she bought the property in 1979, she and other tenants routinely parked their cars in the #374 lot, for which the Greenburg family charged her a small monthly sum in addition to the rent.
The problem is that in order to get to the #374 lot, one must drive through the Norton Street lot, now owned by the defendant.
Cars of the owners and tenants of #374 and #372 have gotten CT Page 5266 to the small #374 lot by entering and driving across the Norton Street lot since at least 1946. They have done so by using the first curb cut on Norton Street, located about 112 feet south of the intersection with Whalley Avenue. Though there is a second curb cut into the Norton Street lot about 180 feet south of Whalley, people parking cars in the #374 lot throughout the years have used the curb cut closest to Whalley Avenue almost exclusively, since it affords a straight path into the #374 lot.
The owners, tenants, and occasional delivery persons and customers of #374 and #372 never asked permission to travel over this right-of-way. They never used it secretly. They used it in an open manner, nearly every day of the week, and were often seen doing so by the owners and lessees of #376-386.
The owners of #376-386 never granted permission to anyone to use the right-of way. Michael Franford who was in a partnership that owned #376-386 for four or five years in the 1970s and again from 1983-1988 testified that he was aware that people used the Norton Street lot to get to the #374 lot and never interfered with that use. Max Greenburg testified that since he opened the furniture store in 1946 (and cleared the rear area of trees to make the small parking lot in 1947) until he gave up the store in 1996, he drove his car there six days a week using the Norton Street lot. Mr. Greenburg testified that the owner of #376-386 through most of those years, Mr. Johnson who ran the Roger Sherman Pharmacy, observed this use and neither objected to it nor granted permission for it.
In August 1988, the defendant's predecessors in title decided to attempt to prevent the plaintiff from acquiring an easement. DEM Properties, a partnership that owned #376-386 at that time and of which Michael Franford was a partner at one time, caused a Notice of Prevention of Acquisition of Easement to be filed on the land records and served on the plaintiff. There is no evidence that the notice was served on members of the Greenburg family who still owned #372 at that time and who continued to use the right of way.
PLAINTIFF'S CLAIM OF PRESCRIPTIVE EASEMENT
Conn. Gen. Stat. § 47-37 provides that a right of way or any other easement by adverse use can only be acquired if "the use has been continued uninterrupted for fifteen years." The three elements that must be satisfied for the establishment of a such a CT Page 5267 right of way by prescription are that the use was (1) open and visible, (2) continuous and uninterrupted for fifteen years, and (3) engaged in under a claim of right. Zavisza v. Hastings,143 Conn. 40, 45 (1955). All of these elements have been satisfied in this case. The cars that passed over the right of way were clearly visible to all; the use began in 1947 and has continued through 1998; and the use occurred without any recognition of the rights of nor any claim of permission from the owner of the servient estate. Id., 45-46.
In addition to denying the allegations of the plaintiff that a prescriptive easement has been acquired, the defendant has sought to prove certain special defenses that merit discussion here.
The first is that the plaintiff has failed to prove the bounds of the easement. A prescriptive right cannot be acquired unless the use defines its bounds with reasonable certainty.Robert S. Weiss Co. v. Mullins, 196 Conn. 614, 621 (1985). The evidence is that this right of way is equal in width, more or less, to the 15 foot curb cut and that it runs roughly parallel to Whalley Avenue across the sidewalk and across approximately 98 feet of asphalt on the Norton Street lot. The evidence is that, from time to time through the years, painted lines on the asphalt on either side of the right of way have delineated parking spaces, and that the right of way runs as a lane of travel between these lines.
Although the plaintiff has sought to prove the use of an additional diagonal section to access the rear-most portion of the #374 lot, the evidence is insufficient as to both use and definition to support the plaintiff's claim to this additional section. But the bulk of the right of way as defined above is well enough described to meet the test for definite boundaries.Id.
Second, the defendant claims that either the recorded Notice of Prevention of Acquisition of Easement in 1988 or a us pendens recorded in 1991 for the serviant estate and subsequent certificates of foreclosure extinguished any easement that existed. But the first notice by statute can only "be deemed an interruption of the use and shall prevent the acquiring of a right thereto by the continuance of the use for any length of time thereafter." Conn. Gen. Stat. § 47-38 [italics supplied]. The use had been underway for over forty years by the time the 1988 CT Page 5268 Notice was recorded so that it was of no effect in preventing the easement from arising.
Nor was the 1991 lis pendens of any effect in extinguishing the plaintiff's claim of right. Although the defendant correctly cites the general principle of law that title deriving from foreclosures will be held superior to title derived from unrecorded interests, Bristol Lumber Co. v. Derv, 114 Conn. 88
(1931), the plaintiff was never made a party to the foreclosure actions nor was she served any notice of them. The easement arose long before the foreclosure actions were instituted. The easement was then transferred to the plaintiff by the deeds which conveyed the property "with the appurtenances thereof . . . ." See, Zaviszav. Hastings, supra, 46.
Finally the defendant claims that the plaintiff abandoned the easement after the Notice of Prevention of Acquisition was filed in 1988, a claim that is belied both by this litigation and, more importantly, by the plaintiff's continued use of the right of way, as usual, even after being served with the Notice.
In light of the findings of the court that the plaintiff has acquired an interest in the right of way, it is unnecessary for the court to discuss in detail the Second Count — the "spite fence" claim. The court finds insufficient evidence of malice or other improper motive by the defendant, and finds for the defendant on Count II.
With respect to the entry of a permanent injunction and a declaratory judgment pursuant to the court's findings on Count I, the court directs the parties to confer and jointly, or separately if there is no agreement, propose for the court's approval a proper notice to encumbrancers of the defendant's real property and others whose interests may be affected by the declaratory relief requested by the plaintiff in paragraph 4 of her ad damnum. See, Mannweiler v. LaFlamme, 232 Conn. 27 (1995). The court will set the matter down for further hearing if necessary upon the motion to be heard of such other persons as may be so entitled, and shall therefore entertain a request that a final judgment enter.
At present, the court enters a temporary injunction against any interference by the defendant or its agents with the access of the plaintiff over the right of way herein described, and specifically enjoins the erection of any fence or other CT Page 5269 obstruction across such right of way.
Patty Jenkins Pittiman, Judge.