[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE (#134)
The plaintiffs James McQuillan, Sr. and Philip Cobb are individual residents of the Ryder Mobile Home Park located in Milford, Connecticut. The park consists of approximately 220 mobile manufactured homes. The plaintiffs bring this action and seek to be certified as representatives of a class of all residents of the mobile home park.
This lawsuit, which is asserted in twenty-two counts,[1] is brought against a number of defendants involved in the past and present ownership of this mobile home park. By their second amended complaint (#133), the plaintiffs essentially are seeking to exercise rights granted them by General Statutes § 21-70
(f), to purchase the Ryder Mobile Home Park rather than allow it to be sold to a purchaser who intends to discontinue the use of the land as a mobile home park. The defendants have filed a motion to strike all of the plaintiffs' claims except those seeking a declaratory judgment regarding the respective rights of the plaintiffs and the defendant Milford Holdings, LLC, as the current owner of the Ryder Mobile Home Park.
The court's role in considering a motion to strike is to accept as true the facts as pleaded and determine whether those facts are sufficient to support a cause of action. Novametrix MedicalSystems v. BOC Group, Inc., 224 Conn. 210, 214-215, 618 A.2d 25
(1992); Mingachos v. C.B.S. Inc., 196 Conn. 91, 108-109,491 A.2d 368 (1985).
The facts as alleged indicate that the Ryder Mobile Home Park is located on the Post Road in Milford, Connecticut, and for almost fifty years has been used as a mobile home park. As of August of 1998, the property was owned by Robert J. Engelman, Trustee, and Bonita Springs, LLC, together holding a 75% interest, and by Philip Gary Zink, who held the remaining 25% interest in the property. In August of 1998, the defendant Samuel J. Heyman entered into an agreement with Engelman and Bonita Springs by which Heyman agreed to purchase their 75% interest in CT Page 1963 the property. On November 6, 1998, Heyman assigned his rights to purchase the Engelman/Bonita Springs interest to Arawana Mills Company, which in turn assigned its right of ownership to Milford Holdings, LLC (Milford Holdings). The closing and transfer of title of the Engelman/Bonita Springs interest occurred on November 5 and 6, 1998. At that time, the Engelman/Bonita Springs interest was transferred to Milford Holdings.
On November 5, 1998, the residents of the mobile home park for the first time were given the required General Statutes §21-70(f)(2) notice of Engelman/Bonita Springs' intention to sell their interest in the property "to a person who intends to change the use of the land and discontinue its use as a mobile manufactured home park." General Statutes § 21-70(f)(3) provides that the residents of the park through the Ryder Park Residents' Association, Inc. (Association) then had ninety days from the date of that notice to notify the defendants of the Association's interest in purchasing the property. The Association did so notify the defendants on February 1, 1999, that "it is interested in purchasing Ryder Mobile Home Park."
Milford Holdings purchased on March 9, 1999, the 25% interest held by defendant Philip Gary Zink. At the time of the closing. Zink gave the mobile home park residents General Statutes §21-70(f)(2) notice of his intention to sell his interest in the property "to a person who intends to discontinue its use as a mobile manufactured home park." The Association gave Zink timely notice that it was interested in purchasing the Ryder Home Park.
According to General Statutes § 20-70(f)(3) and (4), the Association had 180 days after the notice in which to purchase the property. The Association by notice dated April 28, 1999, notified the defendants that it intended to exercise its rights and would be prepared to close on the property on Monday, May 3, 1999. The Association demanded that the defendants prepare and bring with them to the closing the necessary conveyancing documents. The defendants refused and there was no conveyance of the mobile home park property to the Association. The plaintiffs continue to reside at the mobile home park as do other residents.
The defendants have moved to strike the specific performance claims (first, eleventh and seventeenth counts) against Engelman, Bonita Springs, Zink and Milford Holdings on the basis that the plaintiffs have failed to plead the existence of a legally enforceable contract with these defendants, regarding sale of the CT Page 1964 subject property. The plaintiffs argue that they are seeking specific performance of a statutory right to purchase the property, not specific performance of a contract.
The plaintiffs are unable to cite any authority supporting their position that the equitable remedy of specific performance may be applied to an expectation other than a contractual right. Their failure to plead that they had an enforceable agreement with any one of the defendants precludes their claims for specific performance. Niagara Mohawk Power Corp v. Graver Tank Manufacturing Co., 470 F. Sup. 1308, 1324 (N.D.N.Y. 1979), 71 Am.Jur.2nd Specific Performance § 13 (1973). The motion to strike the first, eleventh and seventeenth counts is granted.
The defendants have moved to strike all counts asserted against the former owners on the theory that these former owners no longer have any legal interest in the property. They argue that the plaintiffs' remedy is a declaratory judgment action between the plaintiffs and Milford Holdings to determine their respective statutory rights. This argument is based upon the defendants' interpretation of the statutory scheme underlying General Statutes § 21-64 et. seq., relating generally to mobile manufactured home parks and their residents. The defendants assert that there is nothing in the statutes that precludes owners from selling property subject to its provisions, as long as the owners provide the required notice.
General Statutes § 21-70(f)(4) suggests that the §21-70(f)(2) notice should be provided prior to a sale.[2]
Accordingly, if the plaintiffs' statutory right to purchase the property was adversely affected by the sale of the property prior to the former owners giving the required notice, then it could be necessary for the court to invoke its equitable power, as to the former owners, if such a remedy would facilitate the exercise of a statutory right. Injunctive relief would not be imposed in this situation to punish past wrongs; instead, this remedy would be recognition that "[e]quity regards as done what ought to be done . . . or which ought to have been done. (Citations omitted; internal quotation marks omitted.) Natural Harmony, Inc. v.Normand, 211 Conn. 146, 149, 558 A.2d 231 (1989). The defendant's motion to strike the second count seeking injunctive relief against Engelman and Bonita Springs is denied. The motion to strike the twelfth count with respect to Zink is denied, as is the motion to strike the eighteenth count as to Milford Holdings. CT Page 1965
The defendants similarly have moved to strike the claims for declaratory relief asserted against the former owners in the third and thirteenth counts as legally insufficient because the plaintiffs have failed to set forth a basis under Practice Book § 17-55 for granting such declaratory relief. The participation of these former owners does appear necessary under Practice Book §§ 17-55 and 17-56 declaratory judgment guidelines, which specifically require participation by all persons having an interest in the subject matter of the complaint. Although the defendants deny holding any interest in the property, having conveyed it to the current owner, their participation is necessary in order for the plaintiffs to pursue their theory of recovery under the § 21-70 statutory scheme. "The purpose of a declaratory judgment action is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties." Mannweiler v. LaFlamme, 232 Conn. 27, 33,653 A.2d 168 (1995). Resolving the question whether the plaintiffs had a statutory right to purchase the property under the same terms as the current owner requires the participation of the sellers. The motion to strike the third and thirteenth counts is denied.
The defendants have moved to strike the claims asserted against defendant Heyman in the seventh, eighth, ninth and tenth counts. The plaintiffs allege that Heyman failed to provide them with notice of his August 1998 agreement with Engleman and Bonita Springs to purchase their 75% interest in the mobile home park, and thereby violated the plaintiffs' rights under General Statutes § 21-70. Defendant Heyman is a necessary and proper party with respect to the plaintiffs' assertion of statutory rights under § 21-70. The motion to strike the seventh, eighth, ninth and tenth counts is denied.
The defendants also have moved to strike the claims asserted under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., set forth in the fourth, fifth, ninth, tenth, fourteenth, fifteenth, twentieth and twenty-first counts. Inasmuch as General Statutes § 21-83e(b) makes any violation of § 21-64 et. seq. a per se violation of CUTPA, the plaintiffs have sufficiently alleged a CUTPA claim. See A.Secondino and Son, Inc. v. Lori, 215 Conn. 336, 343,576 A.2d 464 (1990). The motion to strike the CUTPA claims is denied.
The court therefore grants the motion to strike the first, eleventh and seventeenth counts claiming specific performance of CT Page 1966 a statutory right. The motion to strike is denied as to all other remaining counts of the second amended complaint.
Robert F. Mcweeny, J.