[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a declaratory action brought by an insurance carrier against its insured to determine whether or not the company is obligated under CT Page 16948 its two contracts of insurance to indemnify its insured for monies paid to resolve a claim brought against the insured in a separate action. The two policies consist of a homeowner's policy and an umbrella policy. Counsel have admitted that because the initial matter was settled for the amount of $15,000, the issues of this case should be determined by the insured's personal liability homeowner's policy. Specifically, the policy requires that the claim arise out of an occurrence resulting in bodily injury. The definition of occurrence in the policy is "accident." There is a specific reference to an exclusion for non-physical injuries or emotional distress in the policy.
 FACTS
The court makes the following findings of fact.
At the time of the incident, the insured, David Malcolm, owned four shot guns and one hand gun, a Beretta. In order to discharge the gun, Malcolm testified that he was required to pull the trigger for each shot. On October 23, 1997, Malcolm, who was emptying the truck of his vehicle, noticed another vehicle coming up his driveway at approximately 150 feet away. At that time, Malcolm, as was his custom, had his gun holstered on his right hip. To the best of his recollection, the gun had the safety on and it was not until this time that he removed the gun from its holster and took the safety off. Malcolm testified that he hollered twice for the vehicle to approach. He then discharged his firearm and shouted something. He admitted he fired three or four times, however, the police found eight shells in the driveway. Each shot required him to pull the trigger separately. He admitted that he was angry. He believes that he shot the weapon first and then swore at the car.
Malcolm testified that when he first noticed the vehicle, it was 150 feet away from him. He testified that when he fired his weapon, he brought it across his chest and fired into the air at a direction away from the vehicle. He did not know who was in the car, how many people were in the car and he could not see inside the vehicle. He testified several times, that the purpose of discharging his firearm was to get the person off his property. The vehicle was actually backing up and beginning to turn around when the incident occurred.
The defendant, Albert Honegan, who was operating the vehicle, testified that he drove onto the property as a result of seeing a "For Sale" sign, which was on the property next door. He testified that he drove into the driveway and saw Malcolm walking at a brisk pace toward him. Malcolm appeared to be hostile and angry. He testified that he back up the car and did a "K" turn and the man began screaming profanities at him. The defendant testified that he was frightened and scared. As he was leaving CT Page 16949 the property, he heard screaming telling him to get off the grass and then a succession of three or more shots. He recalled hearing six shots. He testified that he was on his way out of the driveway when he heard the shots. He looked back and saw that Malcolm was still coming. He testified that he did not see when the gun was fired. He testified that soon after the incident he started crying and called the State Police. He testified that while he eventually went to counseling, he was not physically hurt by any bullet or debris. He suffered no physical abuse, just emotional abuse, which he considered extreme. He believes that Malcolm intended to inflict emotional distress on him.
 DISCUSSION
"The purpose of a declaratory judgment action . . . is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties." (Internal quotation marks omitted.) Mannweiler v. LaFlamme, 232 Conn. 27,33, 653 A.2d 168 (1995). Declaratory judgment provides an appropriate procedural "vehicle to test the rights and liabilities under an insurance policy." St. Paul Fire Marine Ins. Co. v. Shernow, 22 Conn. App. 377,380, 577 A.2d 1093 (1990). A "trial court is afforded wide discretion to render a declaratory judgment." Leoni v. Water Pollution ControlAuthority, 21 Conn. App. 77, 83, 571 A.2d 153 (1990).
The plaintiff claims that it does not owe the insured an obligation to indemnify him for a $15,000 settlement agreement he reached with Honegan in a prior proceeding because the damages allegedly sustained by Honegan did not arise out of an occurrence or "accident," as defined in the homeowner's policy. The policy covers bodily injury or property damage caused by an occurrence. An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in . . . bodily injury or . . . property damage." The policy excludes coverage for damages arising from intentional acts, defined as "an act or omission by or at the direction of any `insured' which is reasonably expected or intended to cause a loss."
In response, the defendant argues that his actions were a reaction to an event and unintentional and, therefore, within the policy's coverage. In support of this argument, the defendant submits his own testimony that he "did not intend anything. His actions were a reaction. He wasn't thinking or intending anything [when he fired the three or four shots into the air]." The defendant further argues that none of the policy exclusions should preclude coverage of his claim because he did not intend to cause a loss nor were his actions reasonably expected to cause a loss to any person or property. CT Page 16950
The issue, then, is whether the evidence presented by the defendant is sufficient to show that his acts were accidental, as opposed to intentional. "Accident" is not defined in the homeowner's policy. Webster's defines "accident" as "an unforeseen unplanned event or condition." Webster's Third New International Dictionary 11 (1971) . . . Our Supreme Court similarly defined the term in a much cited workers' compensation case as "an unlooked for mishap or an untoward event or condition not expected." Linnane v. Aetna Brewing Co., 91 Conn. 158,162, 99 A. 507 (1916).
Intent, on the other hand, involves "a state of mind . . . aboutconsequences of an act (or omission) and not about the act itself . . . [that] extends not only to having in the mind a purpose (or desire) to bring about given consequences but also to having in mind a belief (or knowledge) that given consequences are substantially certain to result from the act." (Emphasis in original; internal quotation marks omitted.)American National Fire Ins. Co. v. Schuss, 221 Conn. 768, 776, 607 A.2d 418
(1992). "Thus, intentional conduct extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does." (Internal quotation marks omitted.) Id. "Furthermore, [i]t is not essential that the precise injury which was done be the one intended. . . . Rather, it is an intent to bring about a result which will invade the interests of another in a way that the law forbids." (Citation omitted; internal quotation marks omitted.) Id.
In the present case, the evidence presented shows that the defendant intended to fire his gun. By way of testimony, the defendant stated that upon observing a vehicle drive onto his property, he removed his gun from its holster. The reason he removed the gun from its holster was in preparation of firing the gun. He stated that the next step he took was to release the safety on the gun. This requires the physical action of flipping the safety with his thumb. He stated that in order to fire the gun, the trigger must be pulled with force. The defendant stated that he intended to squeeze the trigger of the gun and fire three or four separate shots. He further stated that he shouted profanities and made unfriendly gestures during the shooting incident. These actions had the desired effect of causing Honegan to leave the property. Nothing in these statements shows that the defendant did not intend to fire his gun. In fact, the defendant never denied that his actions in firing the gun were not intentional just that they were not intend to harm anyone. The issue of whether the defendant intended to harm someone is, however, irrelevant to the issue of whether an accident occurred.
Based on the foregoing, this court concludes that the separate acts of CT Page 16951 taking the gun out of its holster, releasing the safety and firing multiple shots is indicative of an intentional act and not the result of an accident. These volitional acts, including the use of profanity, had the desired effect of causing Honegan to leave the property and, therefore, were intentional and not an occurrence as defined in the homeowner's policy.
Unlike the issue of whether an occurrence exists in the first instance, in determining whether an exclusion applies courts have universally focused on whether the damages were reasonably expected or intended to cause a loss. American National Fire Ins. Co. v. Schuss,
supra, 221 Conn. 777-78. Application of the above stated principles to the evidence in this case not only compels the conclusion that the defendant acted intentionally, but that his actions would likely cause a reasonable person to be in fear for his life and, therefore, leave the property.
Certain facts bear repeating. Upon observing a vehicle drive onto his property, Malcolm removed his gun from its holster. The reason he removed the gun from his holster was in preparation of firing the gun. Malcolm stated that the next step he took was to release the safety on the gun. This requires the physical action of flipping the safety with his thumb. He stated that in order to fire the gun, one had to remove the safety and pull the trigger of the gun with force. The defendant stated that he intended to squeeze the trigger of the gun and fire three or four separate shots. He further stated that he shouted profanities and made unfriendly gestures during the shooting incident. All with the desired intention of causing Honegan to leave his property, which he did.
The only rational conclusion, then, is that Malcolm acted either with the desire to cause fear or with a substantial certainty that such fear would occur thereby causing Honegan to leave his property. It would defy common sense to think that Malcolm neither desired nor knew with substantial certainty that, when he fired three or four shots into the air, it would scare Honegan off his property and cause possible harm. Id. ("It is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom"). It is of no moment that he may not have specifically intended to harm Honegan. The degree of the intentional invasion of Honegan's interest is not determinative. Id. It is not necessary that the precise injury that occurred be the one intended, so long as the injury was the direct and natural consequence of the intended act. Id. Malcolm should have expected that when he fired three or four shots into the air to scare Honegan off his property his actions could possibly cause Honegan harm. Because Malcolm's actions were intentional and intended or reasonably expected to cause a loss, no exclusion applies in the present case. CT Page 16952
Accordingly, the court concludes that the plaintiff has no duty to indemnify Malcolm in the underlying action.
Gilardi, J.