MARIBETH BENEDETTO LIGHTOWLER ET AL. *v.*
CONTINENTAL INSURANCE COMPANY ET AL.
(SC 16323)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued September 26, 2000—officially released April 10, 2001

*Maria S. Spalding*, with whom, on the brief, were *John G. Stretton* and *Jennifer Groves*, for the appellant (defendant Steven Brayton).

*Tracy Alan Saxe*, for the appellee (named plaintiff).

*Opinion*

PALMER, J. This interlocutory appeal arises out of an action brought by the named plaintiff, Maribeth

Benedetto Lightowler (plaintiff),[1] against Steven Brayton, an attorney, and the named defendant, Brayton's professional liability insurance carrier, Continental Insurance Company (Continental),[2] alleging that Brayton had committed legal malpractice in his representation of the plaintiff and her deceased father's estate. The sole issue presented by this appeal is whether the trial court properly denied Brayton's motion to dismiss even though the plaintiff's right to recover against Brayton for his alleged malpractice had been extinguished by virtue of Brayton's discharge in bankruptcy. The plaintiff claims that the trial court properly concluded that she may maintain her action against Brayton because she seeks a judgment against Brayton solely for the purpose of obtaining a recovery under a professional liability insurance policy (policy) under which Brayton was insured and not against Brayton personally. Brayton contends that, because the policy contains a provision stating that Continental's "right and duty to defend" is subject to a $5000 deductible payable by Brayton, the plaintiff's action exposes him to personal liability and, therefore, the trial court improperly denied his motion to dismiss in violation of the fresh start policy of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.[3] We conclude that the trial court properly denied Brayton's motion to dismiss.

---

[1] The plaintiff brought this action in her individual capacity and as executrix of the estate of her deceased father, Victor Benedetto.

[2] Continental is a party to the underlying action but is not a party to this appeal.

[3] "For nearly 100 years it has been the primary purpose of the old Bankruptcy Act and now the new Bankruptcy Code to relieve the honest debtor from the weight of oppressive indebtedness and permit him [or her] to start afresh, *Williams* v. [*United States Fidelity & Guaranty Co.*], 236 U.S. 549, 554–55, 35 S. Ct. 289, 59 L. Ed. 713 (1915), by providing the debtor a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt. *Local Loan Co.* v. *Hunt*, 292 U.S. 234, 244, 54 S. Ct. 695, 78 L. Ed. 1230 (1934)." (Internal quotation marks omitted.) *In re Renshaw*, 222 F.3d 82, 86 (2d Cir. 2000). This overriding purpose of the Bankruptcy Code is known as the fresh start policy. See, e.g., *Grogan* v. *Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 112 L. Ed. 2d 755

For purposes of this appeal, we accept as true the following facts alleged by the plaintiff.[4] The plaintiff retained Brayton to perform certain legal services for her and for the estate of her deceased father, who died in 1991. Brayton allegedly performed those services negligently, thereby causing "injury, loss and damage" to the plaintiff and to her father's estate. When Brayton performed those services, he was covered under a professional liability insurance policy issued by Continental. That policy, which contains a liability limit of one million dollars, requires the payment of a deductible and declares that Continental's "right and duty to defend" any action brought against Brayton is subject to Brayton's payment of the first $5000 in costs, expenses or damages resulting from such action. Under the policy, these costs and expenses include attorney's fees incurred in defending the action.

On November 22, 1996, subsequent to his alleged negligent representation of the plaintiff, Brayton filed a bankruptcy petition in the United States Bankruptcy Court for the District of Connecticut under chapter 7 of the Bankruptcy Code. 11 U.S.C. § 701 et seq. (Sup. II 1996). Brayton's petition, which alleged that he had no assets, named the plaintiff as a creditor. Brayton thereafter received a discharge in bankruptcy, thereby extinguishing any right that the plaintiff would have had to recover against Brayton stemming from Brayton's alleged legal malpractice.[5]

(1991); *In re Boodrow*, 126 F.3d 43, 51 (2d Cir. 1997); *In re Chalasani*, 92 F.3d 1300, 1310 (2d Cir. 1996).

[4] "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." *Pamela B.* v. *Ment*, 244 Conn. 296, 308, 709 A.2d 1089 (1998).

[5] The plaintiff does not dispute that Brayton's discharge in bankruptcy relieved Brayton of any financial obligation that he may have had to the plaintiff or her father's estate arising from his alleged malpractice.

After Brayton's discharge in bankruptcy, the plaintiff filed this action against Brayton and Continental seeking recovery only to the extent of Brayton's coverage under the policy.[6] Continental agreed to defend the action against Brayton while reserving its right to deny coverage in the event that Brayton's conduct fell outside the scope of the policy's coverage or within a policy exclusion.[7] Brayton moved to dismiss the complaint against him on the ground that the action violates the fresh start policy of the Bankruptcy Code; see footnote 3 of this opinion and accompanying text; in that the action subjects him to exposure under the $5000 deductible provision of the policy.[8] The trial court denied Brayton's motion to dismiss, and Brayton filed a petition for certification to appeal from the denial of that motion pursuant to General Statutes § 52-265a.[9] Justice Borden,

[6] Brayton is named as a defendant only because he is the owner of the policy. See footnote 15 of this opinion.

[7] "[A]n insurer's duty to defend . . . is determined by reference to the allegations contained in the [injured party's] complaint. . . . The duty to defend an insured arises if the complaint states a cause of action which appears on its face to be within the terms of the policy coverage. . . . Because [t]he duty to defend has a broader aspect than the duty to indemnify and does not depend on whether the injured party will prevail against the insured . . . [i]f an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 323–24, 714 A.2d 1230 (1998); see also *Keithan* v. *Massachusetts Bonding & Ins. Co.*, 159 Conn. 128, 138–39, 267 A.2d 660 (1970).

[8] Brayton informs us that he already has paid attorney's fees totaling $1252.34 in connection with the defense of the plaintiff's action. We note that Brayton's counsel was selected by Continental in accordance with its right to do so under the policy.

[9] General Statutes § 52-265a provides: "Direct appeal on questions involving the public interest. (a) Notwithstanding the provisions of sections 52-264 and 52-265, any party to an action who is aggrieved by an order or decision of the Superior Court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the Supreme Court within two weeks from the date of the issuance of the order or decision. The appeal shall state the question of law on which it is based.

"(b) The Chief Justice shall, within one week of receipt of the appeal,

acting in the absence of the Chief Justice, granted Brayton's petition under § 52-265a.[10]

On appeal, Brayton renews his claim that the plaintiff's action against him violates the fresh start policy of the Bankruptcy Code. Specifically, Brayton asserts that the plaintiff's action exposes him to personal liability because the policy requires him to pay the first $5000 in costs, expenses or damages incurred in connection with that action. The plaintiff counters that her action does not expose Brayton to any personal liability and, therefore, does not violate the Bankruptcy Code's fresh start policy because Brayton's discharge in bankruptcy released him from any obligation to Continental notwithstanding the $5000 deductible provision in the policy. We agree with the plaintiff.[11]

Before addressing the merits of Brayton's claim, we note, preliminarily, that, under 11 U.S.C. § 727, a debtor whose bankruptcy petition satisfies the requirements of chapter 7 of the Bankruptcy Code generally is entitled to the discharge of any debt that arose prior to the filing of the petition. The discharge of a debt pursuant to

rule whether the issue involves a substantial public interest and whether delay may work a substantial injustice.

"(c) Upon certification by the Chief Justice that a substantial public interest is involved and that delay may work a substantial injustice, the trial judge shall immediately transmit a certificate of his decision, together with a proper finding of fact, to the Chief Justice, who shall thereupon call a special session of the Supreme Court for the purpose of an immediate hearing upon the appeal.

"(d) The Chief Justice may make orders to expedite such appeals, including orders specifying the manner in which the record on appeal may be prepared."

[10] The Chief Justice had disqualified himself from consideration of the petition.

[11] Because the issue raised by this appeal presents a question of law, our review of the trial court's determination is plenary. E.g., *In re David W.*, 254 Conn. 676, 686, 759 A.2d 89 (2000); *Commission on Human Rights & Opportunities* v. *Sullivan Associates*, 250 Conn. 763, 786, 739 A.2d 238 (1999).

§ 727 triggers the operation of the provisions of 11 U.S.C. § 524,[12] which shield the debtor from any personal liability for that debt by affording the debtor the right to "an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524 (a) (2) (1994). However, 11 U.S.C. § 524 (e)[13] expressly provides that the relief accorded the debtor under the provisions of § 524 does not extend to other parties. "Together, the language of these sections reveals that Congress sought to free the debtor of his [or her] personal obligations while ensuring that no one else reaps a similar benefit." *Green* v. *Welsh*, 956 F.2d 30, 33 (2d Cir. 1992); accord *Terwilliger* v. *Terwilliger*, 206 F.3d 240, 247 (2d Cir. 2000). Thus, "the purpose of [§] 524 of the Bankruptcy Code is to protect the debtor and not to shield third parties such as insurers who may be liable on behalf of the debtor. . . . The fresh-start policy is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured." (Internal quotation marks omitted.) *In re Jet Florida Systems, Inc.*, 883 F.2d 970, 975 (11th Cir. 1989). Furthermore, as Brayton concedes, a claimant is not barred from obtaining a judgment against a discharged debtor solely for the purpose of establishing the debtor's liability when, as in the present case, a judgment against the debtor is a prerequisite to recovering against the

---

[12] Title 11 of the United States Code, § 524, provides in relevant part: "(a) A discharge in a case under this title—

"(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged . . .

"(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ."

[13] Title 11 of United States Code, § 524 (e), provides in relevant part that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."

debtor's insurer.[14] See General Statutes § 38a-321.[15] It

[14] Brayton's concession that a claimant has a right to maintain an action against a discharged debtor solely for the purpose of allowing the claimant to seek recovery against the debtor's insurer is consistent with the great weight of authority. E.g., *In re Edgeworth*, 993 F.2d 51, 54 (5th Cir. 1993) ("[m]ost courts have held that the scope of a [§] 524 (a) injunction does not affect the liability of liability insurers and does not prevent establishing their liability by proceeding against a discharged debtor"); *Green v. Welsh*, supra, 956 F.2d 33 ("[n]umerous courts, confronted with a tort claimant who seeks to proceed against a discharged debtor only for the purpose of recovering against an insurer, have relied on §§ 524 (a) and 524 (e) and the fresh start policy in concluding that the discharge injunction does not bar such a suit"); *In re Shondel*, 950 F.2d 1301, 1307 (7th Cir. 1991) ("When it is necessary to commence or continue a suit against a debtor in order, for example, to establish liability of another, perhaps a surety, such suit would not be barred. Section 524 (e) was intended for the benefit of the debtor but was not meant to affect the liability of third parties or to prevent establishing such liability through whatever means required."); *In re Walker*, 927 F.2d 1138, 1142 (10th Cir. 1991) ("[i]t is well established that [11 U.S.C. § 524 (e)] permits a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when . . . establishment of that liability is a prerequisite to recovery from another entity").

[15] Under § 38a-321, the plaintiff is required to obtain a judgment against Brayton before seeking to recover against Continental. General Statutes § 38a-321 provides: "Liability of insurer under liability policy. Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty. No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void. Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

bears emphasis, however, that "[t]his exception to the permanent injunction under [§] 524 (a) is necessarily conditioned upon the debtor's being exempted from any exposure to personal expense or liability, resulting from the creditor's action, which would imperil [his or her] fresh start. . . . *In re Walker*, [927 F.2d 1138, 1142 (10th Cir. 1991)]; *In re Jet [Florida Systems, Inc.*, supra, 975]; *In re Edgeworth*, [993 F.2d 51, 53–54 (5th Cir. 1993)]." (Internal quotation marks omitted.) *In re Jason Pharmaceuticals, Inc.*, 224 B.R. 315, 323 (Bankr. D. Md. 1998).

Finally, "[a] claim will be deemed pre-petition when it arises out of a relationship recognized in, for example, the law of contracts or torts. A claim exists only if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation—a right to payment—under the relevant non-bankruptcy law."[16] (Internal quotation marks omitted.) *In re Chateaugay Corp.*, 53 F.3d 478, 497 (2d Cir. 1995).

Brayton contends that the plaintiff cannot maintain her action against him without subjecting him to personal liability because he is responsible for paying the first $5000 in costs, expenses or damages incurred in connection with the defense of the plaintiff's action pursuant to the provisions of the policy. In other words, Brayton claims that, even though the plaintiff does not seek to recover against him personally, her action violates the fresh start policy of the Bankruptcy Code in light of Brayton's obligation to pay up to a $5000 deductible under the terms of the policy.

We would agree with Brayton's claim that, if the deductible were enforceable by Continental, then the

---

[16] In this case, the relevant nonbankruptcy law is, of course, state contract law. Furthermore, as we have indicated, it is undisputed that Continental issued its policy to Brayton prepetition.

plaintiff's action against Brayton would run afoul of the Bankruptcy Code because Brayton would be required to pay up to $5000 in connection with a discharged claim, namely, the plaintiff's claim against him for legal malpractice. We conclude, however, that Brayton's obligation to pay the deductible to Continental also was extinguished when he received his discharge in bankruptcy and, consequently, Brayton has no exposure to personal liability under the provisions of the policy.[17]

The Bankruptcy Code defines "debt" as a "liability on a claim . . . ." 11 U.S.C. § 101 (12) (1994). "This definition reveals Congress' intent that the meanings of 'debt' and 'claim' be coextensive." *Pennsylvania Dept. of Public Welfare* v. *Davenport*, 495 U.S. 552, 558, 110 S. Ct. 2126, 109 L. Ed. 2d 588 (1990). A "claim" is defined under the Bankruptcy Code as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101 (5) (A) (1994). "Congress intended by this language to adopt the broadest available definition of 'claim.' " *Johnson* v. *Home State Bank*, 501 U.S. 78, 83, 111 S. Ct. 2150, 115 L. Ed. 2d 66 (1991). "By this broadest possible definition . . . [of the term claim, the Bankruptcy Code] contemplates that all legal obligations of the debtor, *no matter how remote or contingent*, will be able to be dealt with in the bankruptcy case." (Emphasis added; internal quotation marks omitted.) *In re Chateaugay Corp.*, 944 F.2d 997, 1003 (2d Cir. 1991), quoting H.R. Rep. No. 95-595, p. 309 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6266; see also 2 W. Collier, Bankruptcy (15th Ed. Rev. 2000) ¶101.05 [1], pp. 101-25

---

[17] We note that Brayton makes no claim that his failure to name Continental as a creditor in his bankruptcy petition, which alleged that he had no assets, affects the dischargeability of his obligation to Continental. Cf. *In re Madaj*, 149 F.3d 467, 472 (6th Cir. 1998).

through 101-27. "The Bankruptcy Code does not specifically define contingent claims. However, in the context of a contract claim, [as in the present case] . . . contingent claims refer to obligations that will become due upon the happening of a future event that was within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created." (Internal quotation marks omitted.) *In re Manville Forest Products Corp.*, 209 F.3d 125, 128–29 (2d Cir. 2000), quoting *In re Chateaugay Corp.*, supra, 944 F.2d 1004; see also 2 W. Collier, supra, ¶ 101.05 [1], pp. 101-26 through 101-27 (" 'Claim' may . . . include a cause of action or right to payment that has not yet accrued or become cognizable. Neither the contingency of the debt nor the immaturity of the obligation affects whether a right to payment is a claim. A creditor's right to payment that arose from the earliest point in the relationship between debtor and creditor is a claim.").

In applying the foregoing principles of bankruptcy law to the present case, we are persuaded that the deductible required by the policy is an obligation that was extinguished by virtue of Brayton's discharge in bankruptcy. Payment of the deductible is an obligation of the policyholder, Brayton, that was contingent upon the occurrence of a future event, namely, the filing of a malpractice claim against Brayton within the time period covered by the policy. Because an obligation is subject to discharge even if it is contingent, the dischargeability of Brayton's obligation to pay the deductible pursuant to the provisions of the policy was not affected by the fact that, when Brayton purchased the policy, it was uncertain whether and how much Brayton might be required to pay as a deductible. Although the deductible provision in the policy did not give rise to a *payment* obligation until after the plaintiff had commenced her action against Brayton, the deductible constituted an obligation that would "become due upon

the happening of a future event that was within the actual . . . contemplation of [Brayton and Continental] at the time the original [prepetition] relationship between [them] was created." (Internal quotation marks omitted.) *In re Manville Forest Products Corp.*, supra, 209 F.3d 128–29; see also *In re Rosteck*, 899 F.2d 694, 696–97 (7th Cir. 1990); *In re Lamb*, 171 B.R. 52, 55 (Bankr. N.D. Ohio 1994); *In re Wasp*, 137 B.R. 71, 72–73 (Bankr. M.D. Fla. 1992); *Lumbermens Mutual Casualty Co.* v. *Morse Shoe Co.*, 218 App. Div. 2d 624, 625–26, 630 N.Y.S.2d 1003 (1995). In other words, Continental's right to recover against Brayton pursuant to the deductible provision in the policy constitutes a dischargeable claim for purposes of the Bankruptcy Code because Brayton's obligation under the deductible provision of the policy existed prepetition and, although his payment obligation thereunder was contingent on the occurrence of an event in the future, that future occurrence—the filing of a legal malpractice action against Brayton—was within the contemplation of Brayton and Continental when the policy was issued. Indeed, Brayton purchased the Continental policy to insure against the risk of a claim being filed against him arising from his professional negligence. We conclude, therefore, that Continental's right to recover the deductible from Brayton was extinguished when Brayton was granted his discharge in bankruptcy.[18]

Because Brayton has no enforceable obligation to pay the deductible to Continental under the policy, the plaintiff can maintain her action against Brayton—

[18] As we have indicated, Brayton, in accordance with the terms of the deductible provision of the policy, has paid attorney's fees totaling $1252.34 in connection with the defense of the plaintiff's action. See footnote 8 of this opinion. In light of our conclusion regarding the dischargeability of Brayton's obligation to pay the deductible, it is apparent that Brayton had a complete defense to any claim by Continental that he make such payment. For purposes of this appeal, we need not consider the propriety of Brayton's payment.

solely for the purpose of obtaining a judgment against Brayton as a necessary prerequisite to seeking a recovery against Continental—without subjecting Brayton to any exposure to personal liability under the policy.[19] The plaintiff's action against Brayton, therefore, does not violate the fresh start policy of the Bankruptcy Code. Consequently, the trial court properly denied Brayton's motion to dismiss.

The decision of the trial court denying Brayton's motion to dismiss is affirmed.

In this opinion the other justices concurred.

---

[19] We note that Brayton may be required to participate in further proceedings relating to this case, including, for example, deposition or trial testimony, as requested by the plaintiff or Continental. This fact alone, however, does not impermissibly interfere with his fresh start; see, e.g., *In re Doar*, 234 B.R. 203, 206 (Bankr. N.D. Ga. 1999); and Brayton makes no such claim.

