[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION FOR SUMMARY JUDGMENT
This matter presented to the court on January 6, 2003, on the short calendar (non-arguable) docket relates to the plaintiff's motion for summary judgment dated December 13, 2002. The plaintiff, Underwriters at Lloyds of London, is an insurer that has provided a commercial general liability policy to Lauretti's Pierpont Tavern, LLC. Among the named defendants are the assured, Lauretti's Pierpont Tavern, LLC, and Mark Lauretti, the current mayor of the city of Shelton.[1]
The plaintiff initiated this declaratory judgment action on June 26, 2002, by filing a one-count complaint claiming, inter alia, a declaration determining that the allegations which give rise to an underlying CHRO action, are not covered under the policy, and therefore, the plaintiff owes no duty to defend or indemnify the defendants for the actions alleged in the CHRO complaint.
The plaintiff's motion for summary judgment asserts there is no genuine issue of material fact in this case and the plaintiff is entitled to judgment as a matter of law.
The underlying CHRO action, Lopez v. City of Shelton, Case No. 0230059, EEOC No. 1060013419, was filed on August 1, 2001. In his affidavit filed with the CHRO, Rafael Lopez, a current employee for the city of Shelton, alleges that he was sexually harassed by Ken Nappi, the director of public safety for the city of Shelton. Lopez alleges that he subsequently complained to his supervisor, Robert Vacolla, the chief of police for the city of Shelton. Lopez also alleges that at the same time he was employed part time at Lauretti's Pierpont Tavern, LLC, which was owned by Mark Lauretti, the mayor of the city of Shelton. Lopez further alleges that upon learning of Lopez's complaint against Nappi, Lauretti, through another restaurant employee, told Lopez not to report to work at the restaurant anymore. These actions, Lopez alleges, caused him mental, physical and emotional distress, and loss of income and salary. CT Page 2531
In support of its motion, the plaintiff has attached a copy of the underlying commercial general liability insurance policy and the affidavit of Lopez, which was filed with the CHRO and is the basis of his CHRO claim. On January 3, 2003, the defendants responded by filing a memorandum in opposition to the plaintiff's motion for summary judgment and attached the sworn affidavit of defendant Mark Lauretti. The plaintiff subsequently filed a reply memorandum.
 DISCUSSION
"The purpose of a declaratory judgment action . . . is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties." (Internal quotation marks omitted.) Mannweiler v. LaFlamme, 232 Conn. 27,33, 653 A.2d 168 (1995). "There is no question that a declaratory judgment is a suitable vehicle to test the rights and liabilities under an insurance policy." St. Paul Fire Marine Ins. Co. v. Shernow,22 Conn. App. 377, 380-81, 577 A.2d 1093 (1990), aff'd., 222 Conn. 823, 610 A.2d 1281 (1992).
"The court may address the merits of a declaratory judgment action upon a motion for summary judgment." (Internal quotation marks omitted.)Vitanza v. Amica Mutual Ins. Co., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 181090 (March 13, 2002, Downey, J.) (3 Conn.L.Rptr. 521), citing United Oil Co. v. Urban RedevelopmentCommission, 158 Conn. 364, 378, 290 A.2d 596 (1969). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Buell Industries, Inc. v. Greater NewYork Mutual Ins. Co., 259 Conn. 527, 550, 791 A.2d 489 (2002) "[A]lthough the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) Id.
CT Page 2532
 I
The plaintiff moves for summary judgment on the ground that there is no duty to defend in the underlying CHRO action. In support of its motion, the plaintiff argues that Lopez's claim falls squarely within the "Employment Related Practices Exclusion" as set forth in the policy.
The defendants, however, counter that the court should deny the plaintiff's motion for summary judgment because there is a genuine issue of material fact. The defendants maintain that Lopez was not terminated as an employee, but was simply removed from the active duty roster pending further notice. The defendants contend that such an action is not covered by the exemption raised by the plaintiff and would thus require the plaintiff to defend the action.
"The question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the underlying] complaint with the terms of the insurance policy." Community Action For Greater Middlesex County, Inc. v. AmericanAlliance Ins. Co., 254 Conn. 387, 395, 757 A.2d 1074 (2000). "The duty to defend an insured arises if the complaint states a cause of action which appears on its face to be within the terms of the policy coverage . . . Because [t]he duty to defend has a broader aspect than the duty to indemnify and does not depend on whether the injured party will prevail against the insured . . . [i]f an allegation of the complaint falls evenpossibly within the coverage, then the insurance company must defend the insured." (Internal quotation marks omitted.) Lightowler v. ContinentalIns. Co., 255 Conn. 639, 643 n. 7, 769 A.2d 49 (2001).
With this standard in mind, the court turns to the language of the insurance policy issued to the defendants. "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy . . . The determinative question is the intent of the parties, that is, what coverage the [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy . . . If the words of the policy are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties . . . If, however, the insurance coverage is defined in terms that are ambiguous, such ambiguity is . . . resolved against the insurance company. Where the terms of the CT Page 2533 policy are of doubtful meaning, the construction most favorable to the insured will be adopted." (Citations omitted; internal quotation marks omitted.) Peerless Ins. Co. v. Gonzales, 241 Conn. 476, 481-82,697 A.2d 680 (1997).
The "Employment Related Practices Exclusion" that was made a part of the subject insurance policy provides in part: "this insurance does not apply to `bodily injury' or `personal injury' arising out of any: (1) refusal to employ; (2) termination of employment; (3) coercion, demotion evaluation, resignation, discipline, defamation, harassment, humiliation, discrimination, or other employment related practices, policies, acts or omissions; or (4) consequential `bodily injury' or `personal injury' as a result of (1) through (3) above."
The court must now apply this exclusion to the allegations in the underlying CHRO action. In paragraph 8 of his affidavit, Lopez alleges: "On February 19 or 20, 2001, I saw Respondent Lauretti at Lauretti's Restaurant, where I work a second job. Respondent Lauretti told me that I should meet with Respondent Nappi and `fix things up' right away since Nappi was the individual responsible for me getting my job at the City of Shelton." In paragraph 12, Lopez further alleges: "On or about March 27, 2001, my name was taken off the schedule for working at Lauretti's Restaurant, where I have worked on a part-time basis as a dishwasher for approximately five years. On April 8, 2001 Respondent Lauretti, through another employee, told me not to report to work at his restaurant."
Despite the defendants' assertions, this court finds that the allegations in Lopez's affidavit fall within the "Employment Related Practices Exclusion." The exclusion clearly states that the plaintiff will not be liable to pay damages arising out of the defendants' "refusal to employ . . . termination of employment . . . discipline . . . discrimination, or other employment related practices, policies, acts or omissions . . ." Thus, this court finds that the plaintiff does not have a duty to defend in the underlying action.[2]
 II
The plaintiff also moves for summary judgment on the ground it has no duty to indemnify the defendants. The plaintiff again argues that Lopez's claim falls squarely within the policy's "Employment Related Practices Exclusion."
The defendants, however, counter that there is a genuine issue of material fact as to whether the plaintiff has a duty to indemnify. The defendants contend that Lopez was simply removed from the active duty CT Page 2534 roster pending further notice. Such an action, the defendants maintain, does not fall within the "Employment Related Practices Exclusion."
Although not directly on point, the case of Hartford Accident Indemnity Co. v. Williamson, 153 Conn. 345, 216 A.2d 635 (1966), provides guidance to this court. In that case, the plaintiff insurance company sought a declaratory judgment to determine whether it had a duty to indemnify a defendant in a pending negligence action filed in the Superior Court. Id., 348-49. The court held: "It is to be borne in mind that our declaratory judgment act, which, at its inception, this court described . . . as a novel method of judicial procedure . . . enlarging our methods of remedial justice should not be used, in these days of crowded dockets, to take up the time of the trial court unnecessarily . . . Until [the plaintiff in the underlying action] succeeds in obtaining a judgment . . . the question of the necessity for the plaintiff to respond to it does not arise. If [the plaintiff in the underlying action] does recover a judgment, then General Statutes § 38-175 [now §38a-321] provides the means for the determination whether that judgment is against a person who was insured by the plaintiff against the liability involved."[3] (Citations omitted.) Id., 349-50.
Although the underlying action in this case is a CHRO action, this court finds that the holding of Hartford Accident Indemnity Co. v.Williamson, supra, is broad enough in scope to apply to the facts of this case. In the view of this court, § 38a-321 permits a trial court to determine whether the plaintiff has a duty to indemnify the defendants only after there has been a final judgment in favor of the plaintiff in the underlying action. To make such a determination before a final judgment would be premature.
The plaintiff's motion for summary judgment is granted to the extent that it seeks a declaration that the plaintiff does not have a duty to defend Lauretti's Pierpont Tavern, LLC in the pending CHRO action.
However, for the reasons set forth above, the court does not rule regarding a duty to indemnify.
THE COURT
By RONAN, J.