SYLBERT RAMSAY *v.* CAMRAC, INC., ET AL.

SYLBERT RAMSAY *v.* CITY OF WATERBURY ET AL.
(AC 25528)

Schaller, DiPentima and McLachlan, Js.

Argued January 6—officially released June 27, 2006

*Zbigniew S. Rozbicki*, for the appellant (plaintiff).

*Cheryl E. Johnson*, for the appellees (defendant city of Waterbury et al.).

*Cesar A. Noble*, for the appellee (defendant Camrac, Inc.).

*Opinion*

McLACHLAN, J. This appeal arises out of a motor vehicle accident in which the plaintiff, Sylbert Ramsay, sustained personal injuries and property damage when his vehicle was struck by a stolen motor vehicle that was being pursued by the police. The primary issue before us is whether a release executed in favor of the lessee of the motor vehicle operates as a matter of law to release the vehicle's lessor, the claimed liability of which rests solely on General Statutes (Rev. to 1999) § 14-154a,[1] when prior to the execution of the release,

---

[1] General Statutes (Rev. to 1999) § 14-154a provides: "Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner."

the lessee received a discharge of debts pursuant to 11 U.S.C. § 727. Our resolution of this issue is controlled by our Supreme Court's recent decision in *Cunha* v. *Colon*, 260 Conn. 15, 792 A.2d 832 (2002). Accordingly, we affirm the court's judgment in favor of the lessor.

The following facts and procedural history are relevant to the disposition of the plaintiff's appeal. On July 26, 1999, the defendant Camrac, Inc. (Camrac), leased a car to the defendant Margie Allen. On the morning of August 5, 1999, Allen drove the car to her sister's residence in Waterbury, where she parked it on the street. Leaving the keys in the ignition and the engine running, Allen went inside the building while the passenger, Marvie Brye, remained with the car. Subsequently, Brye exited the car to smoke a cigarette and, while he was standing nearby, the defendant Vance Wright got into the car and drove off. Officers Randy Watts and Charles Sease of the Waterbury police department attempted to stop Wright for a traffic violation, at which time Wright led the police on a high speed chase that ended when he ran the vehicle into the parked car in which the plaintiff was sitting.

The plaintiff brought two actions seeking damages for his personal injuries and for the property damage to his car. The first case, *Ramsay* v. *Camrac, Inc.*, was brought against Allen, the lessee; Camrac, the lessor; and Wright, the driver. In his amended complaint dated January 15, 2001, the plaintiff alleged that Allen negligently left the vehicle unattended in a high crime area with the keys in the ignition, thereby allowing Wright to steal and to operate the vehicle tortiously so as to cause the accident and the plaintiff's injuries.[2] Liability

---

[2] This case returns to us for the second time on appeal. On August 2, 2002, the trial court, *Holzberg, J.*, granted Camrac's motion for summary judgment on the ground that Camrac was not legally responsible under General Statutes (Rev. to 1999) § 14-154a because the vehicle was being operated by Wright, an unauthorized driver, at the time of the accident. See *Pedevillano* v. *Bryon*, 231 Conn. 265, 648 A.2d 873 (1994). The plaintiff appealed, and this court reversed the judgment, concluding that the trial

against Camrac was predicated on § 14-154a, which provides that an owner-lessor of a motor vehicle is liable to the same extent as the lessee for any personal injuries or property damage caused by the lessee's operation of the vehicle.

On March 12, 2002, Allen filed a voluntary "no asset" chapter 7 bankruptcy petition with the United States Bankruptcy Court for the District of Connecticut and subsequently received a discharge of debts, pursuant to 11 U.S.C. § 727. On March 2, 2004, Allen filed with the trial court a notice of bankruptcy filing and a motion to determine the dischargeability of debt with respect to the plaintiff's complaint. Before that motion was decided, the plaintiff entered into a settlement agreement with Allen and her insurer, Patriot General Insurance Company (Patriot). As part of that agreement, the plaintiff executed a release in favor of Allen and Patriot. The release explicitly stated that it represented a full and final release of Allen and Patriot, and that it was "not executed for the benefit of the defendants remaining in said action, namely Camrac, Inc. . . . and/or Vance Wright and to the contrary, it is contemplated that the action will continue as to said defendants."

On March 9, 2004, Camrac filed an amended answer, asserting, by way of special defense, that the release executed by the plaintiff in favor of Allen operated as a matter of law to release Camrac from any and all liability with respect to the plaintiff's claims.

Thereafter, on March 11, 2004, the court granted Allen's motion and ordered that any debts Allen may

court improperly had rendered summary judgment because the complaint clearly alleged that Allen, the authorized driver, was negligent in leaving the vehicle with the keys in the ignition, out of her sight, in a high crime area, thereby allowing it to be driven away by the unauthorized driver. *Ramsay* v. *Camrac, Inc.*, 71 Conn. App. 314, 801 A.2d 886, cert. denied, 261 Conn. 936, 806 A.2d 1066 (2002).

have owed to the plaintiff as a result of the accident were discharged in the chapter 7 proceeding, subject only to any available insurance proceeds applicable to that claim. The plaintiff then withdrew the action against Allen.

The second case, *Ramsay* v. *Waterbury*, was brought against Watts, Sease and Waterbury chief of police Edward Flaherty in their official capacities. The city of Waterbury also was named as a defendant in the plaintiff's complaint for indemnification purposes. Liability against Watts and Sease was predicated on their alleged negligence while engaging in a police pursuit.[3] Liability against Flaherty was predicated on an alleged violation of General Statutes § 14-283a[4] in that he had not fulfilled his statutory duty to take the necessary measures to assure that Watts and Sease understood the pursuit policy adopted by the Waterbury police department.

The two cases were consolidated for purposes of a jury trial, which commenced on March 10, 2004. At the conclusion of the plaintiff's evidence, the court granted Camrac's motion for a directed verdict on the ground that the plaintiff's release of Allen, the lessee, operated as a matter of law to release Camrac, the lessor, under

[3] The plaintiff did not pursue his claim against Sease, who died prior to the commencement of trial.

[4] General Statutes § 14-283a provides in relevant part: "(b) Not later than January 1, 2000, the Commissioner of Public Safety, in conjunction with the Chief State's Attorney, the Police Officer Standards and Training Council, the Connecticut Police Chiefs Association and the Connecticut Coalition of Police and Correctional Officers, shall adopt in accordance with chapter 54 a uniform, state-wide policy for handling pursuits by police officers. . . . The chief of police or Commissioner of Public Safety, as the case may be, shall inform each officer within such chief's or said commissioner's department and each officer responsible for law enforcement in a municipality in which there is no such department of the existence of the policy of pursuit to be employed by any such officer and shall take whatever measures that are necessary to assure that each such officer understands the pursuit policy established."

*Cunha* v. *Colon*, supra, 260 Conn. 15. In *Cunha*, our Supreme Court held that a lessor and lessee are not joint tortfeasors under General Statutes § 52-572e (b)[5] and that a release executed in favor of a lessee also relieves a lessor of liability when sued pursuant to § 14-154a. *Cunha* v. *Colon*, supra, 17. Additionally, the court granted an oral motion for a directed verdict in favor of Flaherty on the ground that he enjoyed governmental immunity under General Statutes § 52-557n for discretionary acts such as the training of police officers.

The jury returned a verdict in favor of the plaintiff in the amount of $85,700 and allocated 25 percent of the negligence to Allen and 75 percent of the negligence to Wright. The jury attributed no negligence to the plaintiff or to Watts. The court rendered judgment thereon and this appeal followed.

In *Ramsay* v. *Camrac, Inc.*, the plaintiff appeals from the judgment on the verdict directed in favor of Camrac and from the judgment rendered on the jury verdict against Wright, claiming that the court improperly (1) directed a verdict for Camrac because the release of Allen did not operate as a matter of law to release Camrac under *Cunha* in light of Allen's bankruptcy discharge and (2) refused to charge the jury on the doctrine of superseding cause and the burden of proof with respect to apportionment defendants.[6]

---

[5] General Statutes § 52-572e (b) provides: "A release by the injured person, or his legal representative, of one joint tortfeasor does not discharge the other tortfeasors unless, and only to the extent, the release so provides."

[6] In the plaintiff's statement of issues, he also claims that the court improperly refused to charge the jury with respect to proximate cause as applicable to Wright, a defaulted defendant. In the argument portion of his brief, the plaintiff recites the challenged instruction and states that he took exception to the charge as given. That constitutes the entire substance of the plaintiff's argument with respect to that issue. We decline to review that claim. "Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Bicio* v. *Brewer*, 92 Conn. App. 158, 172, 884 A.2d 12 (2005).

In *Ramsay* v. *Waterbury*, the plaintiff appeals from the judgment rendered on the jury verdict in favor of Watts, making the broad claim that improper jury instructions given in *Ramsay* v. *Camrac, Inc.*, automatically invalidated the verdict returned in the case against the city because joint interrogatories were submitted to the jury.[7]

## I

We first address the plaintiff's claim that the court improperly directed a verdict in favor of Camrac. The court directed a verdict because, under *Cunha*, Allen and Camrac were not joint tortfeasors within the meaning of § 52-572e and, therefore, as a matter of law, the release of Allen operated to release Camrac regardless of the parties' intent. The plaintiff argues that (1) *Cunha* is not controlling because the lessee, Allen, was discharged of all liability with respect to this action by virtue of the bankruptcy discharge and, therefore, the release was without legal effect as to her, and (2) the question of whether the release operated to release Camrac was one of fact properly to be determined by the jury pursuant to the intent rule articulated in *Sims* v. *Honda Motor Co.*, 225 Conn. 401, 623 A.2d 995 (1993).[8]

---

[7] To the extent that the plaintiff's brief can be read to raise claims of error regarding (1) the judgment rendered on a directed verdict in favor of Flaherty, (2) the court's failure to include the city of Waterbury in its charge to the jury or in the interrogatories submitted to the jury, (3) the submission to the jury of the release executed in favor of Allen and Patriot, and (4) the court's failure to charge as to statutory negligence under General Statutes § 14-283a, we decline to address those issues. The plaintiff fails to provide any legal analysis pertaining to those issues and, therefore, we deem the claims to be abandoned. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Citation omitted; internal quotation marks omitted.) *Turner* v. *American Car Rental, Inc.*, 92 Conn. App. 123, 130–31, 884 A.2d 7 (2005).

[8] The plaintiff also appears to claim that because the lease agreement between Allen and Camrac required Allen to submit the plaintiff's claims to her insurer, Camrac is equitably estopped from claiming the benefit of

We agree with the court that *Cunha* controls the present case.

As a preliminary matter, we set forth the applicable standard of review. "Our standard for reviewing a challenge to a directed verdict is well settled. Generally, litigants have a constitutional right to have factual issues resolved by the jury. . . . Directed verdicts [therefore] are historically not favored and can be upheld on appeal only when the jury could not have reasonably and legally reached any other conclusion. . . . We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. . . . A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict." (Internal quotation marks omitted.) *Hayes* v. *Caspers, Ltd.*, 90 Conn. App. 781, 801, 881 A.2d 428, cert. denied, 276 Conn. 915, 888 A.2d 84 (2005).

At common law in Connecticut, the release of one joint tortfeasor released, by operation of law, all joint tortfeasors. *Sims* v. *Honda Motor Co.*, supra, 225 Conn. 406. Likewise, where liability of the principal was predicated solely on the tort of his agent, the release of either operated to release the other. *Alvarez* v. *New Haven Register, Inc.*, 249 Conn. 709, 715–16, 735 A.2d 306 (1999). In 1969, the legislature abrogated the common-law rule with respect to joint tortfeasors by enacting § 52-572e.[9] In *Sims*, our Supreme Court explained that

a release executed as a result of the settlement reached with that insurer. To the extent that this argument is an independent claim of error, we decline to address it. The claim is not distinctly raised as a separate point on appeal, but rather is buried in the plaintiff's discussion of *Cunha* and *Sims*, thereby precluding effective review of the issue. See *Grimm* v. *Grimm*, 276 Conn. 377, 391 n.14, 886 A.2d 391 (2005). To the extent that this argument is offered in support of the plaintiff's interpretation of the release, we do not reach it in light of our holding that *Cunha* controls.

[9] General Statutes § 52-572e provides: "(a) For the purposes of this section the term 'joint tortfeasors' means two or more persons jointly or severally

under § 52-572e, it is the contracting parties' intent, not the operation of a legal rule, that determines the scope of a release.[10] The court then adopted the "intent rule," whereby the trial court may consider extrinsic evidence of the parties' intent to determine the scope of the release, regardless of whether the language of the release is ambiguous. *Sims* v. *Honda Motor Co.*, supra, 413–14.

In *Alvarez*, our Supreme Court rejected the proposition that § 52-572e and the "intent rule" adopted in *Sims* applied to defendants whose sole liability was vicarious or derivative.[11] The court clarified that § 52-572e was intended to apply only to joint tortfeasors who are independently at fault on the basis of their own tortious conduct, and not to individuals or entities whose sole liability is derivative or vicarious in nature. Thereafter, in *Cunha*, a case with facts almost identical to those in the present case, our Supreme Court concluded that a lessor and a lessee are not joint tortfeasors within the meaning of § 52-572e and that, consequently, as a matter of law, "a release executed in favor of a lessee

liable in tort for the same injury to person or property whether or not a judgment has been recovered against all or any of them.

"(b) A release by the injured person, or his legal representative, of one joint tortfeasor does not discharge the other tortfeasors unless, and only to the extent, the release so provides."

[10] The specific question before the court in *Sims* was "whether, pursuant to General Statutes § 52-572e, an alleged tortfeasor is, as a matter of law, discharged from liability to an injured party by virtue of a general release agreement executed by the injured party that purports to release not only a specifically named tortfeasor, but also all other potentially liable parties, for consideration paid by the named tortfeasor." *Sims* v. *Honda Motor Co.*, supra, 225 Conn. 402.

[11] In *Alvarez*, our Supreme Court considered "whether, notwithstanding General Statutes § 52-572e, a release executed in favor of an employee operates as a matter of law to release the employer whose sole liability is premised on the doctrine of respondeat superior." *Alvarez* v. *New Haven Register, Inc.*, supra, 249 Conn. 710–11. The court held that "the employer and employee are not joint tortfeasors pursuant to [§ 52-572e] and that, accordingly, the employer is released from any derivative liability." Id., 711.

also operates to release the lessor." *Cunha* v. *Colon*, supra, 260 Conn. 17.

The plaintiff seeks to distinguish *Cunha* on the ground that the lessee in that case had not received a bankruptcy discharge prior to the execution of the release.[12] Essentially, the plaintiff seeks to draw an analogy between a bankruptcy discharge issued pursuant to 11 U.S.C. § 727 and a release. We are not persuaded. Those two items are neither synonymous under the law nor equal in their effect on § 14-154a claims.

In Connecticut, a release represents a surrender of the plaintiff's cause of action against the settling tortfeasor. *Gionfriddo* v. *Gartenhaus Cafe*, 211 Conn. 67, 73–74 n.8, 557 A.2d 540 (1989). The discharge of a debt pursuant to § 727 of the Bankruptcy Code triggers the operation of § 524, which protects the debtor from any personal liability on the debt. *Lightowler* v. *Continental Ins. Co.*, 255 Conn. 639, 644–45, 769 A.2d 49 (2001). Section 524 (a) provides in relevant part: "(a) A discharge . . . (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524 (a). No Connecticut appellate court has had the opportunity to consider the characterization of a debt discharged under § 727.

"In general, we look to the federal courts for guidance in resolving issues of federal law." (Internal quotation

---

[12] To the extent that the plaintiff also seeks to distinguish *Cunha* on the ground that a general release was executed in favor of the lessee in that case, the plaintiff's reading of the release is flawed. In *Cunha*, the release purported to extend to "Colon [lessee/operator] and Allstate [insurer] . . . only." (Internal quotation marks omitted.) *Cunha* v. *Colon*, supra, 260 Conn. 18.

marks omitted.) *Krondes* v. *O'Boy*, 69 Conn. App. 802, 808, 796 A.2d 625 (2002). The cases are clear that a discharge in bankruptcy "destroys the remedy but not the indebtedness . . . ." (Citation omitted; internal quotation marks omitted.) *Kesler* v. *Dept. of Public Safety*, 369 U.S. 153, 170, 82 S. Ct. 807, 7 L. Ed. 2d 641 (1962), overruled in part on other grounds by *Perez* v. *Campbell*, 402 U.S. 637, 652, 91 S. Ct. 1704, 29 L. Ed. 2d 233 (1971). A discharge in bankruptcy is neither a payment nor an extinguishment of a debt; the discharge simply bars future legal proceedings to enforce the discharged debt against the debtor. *In re Berry*, 85 B.R. 367, 369 (Bankr. W.D. Pa. 1988); *In re Hepburn*, 27 B.R. 135, 136 (Bankr. E.D.N.Y. 1983). A debt remains in existence after a discharge in bankruptcy, although it is divested of its character as a personal obligation that is legally enforceable. See *In re Cassi*, 24 B.R. 619, 625 (Bankr. N.D. Ind. 1982).[13]

We conclude, therefore, that Allen's discharge in bankruptcy did not extinguish her liability, but merely prohibited any attempt by the plaintiff to enforce the same against her. That liability remained in existence

---

[13] The federal approach enjoys substantial acceptance among the states. See, e.g., *Stewart* v. *Underwood*, 146 Ariz. 145, 148, 704 P.2d 275 (App. 1985) (bankruptcy discharge under Arizona law "not an extinguishment of the debt, but only a bar to enforcement of the debt as a personal obligation of the debtor"); *Hollanger* v. *Hollanger Rice Farms, Inc.*, 445 So. 2d 117, 120 (La. App.) ("discharge in bankruptcy does not constitute payment or extinguishment of obligations which are discharged but merely serves to bar their enforcement by legal proceedings"), cert. denied, 449 So. 2d 1028 (La. 1984); *Ingram* v. *Liberty National Bank & Trust Co.*, 533 P.2d 975, 977 (Okla. 1975) ("debt remains in existence after discharge in bankruptcy, although divested of its character as a personal obligation which is legally enforceable"); *Hageman/Fritz, Byrne, Head & Harrison, LLP* v. *Luth*, 150 S.W.3d 617, 626 (Tex. App. 2004) (adopting federal rule that discharge in bankruptcy neither payment nor extinguishment of debt). This acceptance, however, is not universal. See, e.g., *Brown* v. *National City Bank*, 8 Ohio Misc. 2d 40, 42, 457 N.E.2d 957 (1983) ("discharge of a debt in bankruptcy is more than a mere bar to remedy for the creditor").

until extinguished by the plaintiff's subsequent execution of the release in Allen's favor.[14] Accordingly, under *Cunha*, the release operated as a matter of law to release Camrac. The court therefore properly directed the verdict in favor of Camrac.

## II

We next turn to the plaintiff's claim that the court improperly refused to charge the jury on the doctrine of superseding cause and the burden of proof applicable to apportionment defendants.

"We begin with our standard of review. A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. . . . When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will

---

[14] The plaintiff argues that characterizing a discharge in bankruptcy as placing the debt in an "uncollectible state of suspension" is contrary to the fresh start policy of the Bankruptcy Code, in that it prohibits settlement and forces a plaintiff to pursue his case to judgment against the debtor-lessee in order to recover against the lessor. The plaintiff's argument is without merit. First, our Supreme Court recently held in *Lightowler* v. *Continental Ins. Co.*, supra, 255 Conn. 650–51, that a plaintiff may maintain an action against a defendant, whose liability had been discharged, for the purpose of obtaining a judgment against that defendant as a necessary prerequisite to seeking a recovery against the defendant's insurer, without violating the fresh start policy of the Bankruptcy Code. Second, the plaintiff cites no authority for the proposition that a plaintiff's settlement cannot be obtained without executing a release in favor of the lessee.

not view the instructions as improper." (Internal quotation marks omitted.) *Kramer* v. *Petisi*, 91 Conn. App. 26, 32, 879 A.2d 526, cert. granted on other grounds, 276 Conn. 916, 888 A.2d 84 (2005).

## A

The plaintiff's first claim of instructional impropriety is that the court improperly charged the jury by refusing to charge on the doctrine of superseding cause. The plaintiff argues that there was sufficient evidence to support a finding that Allen's negligence was not superseded by Wright's subsequent theft and tortious operation of the vehicle but that the jury was prohibited from finding Allen wholly responsible for the plaintiff's damages to the exclusion of any negligence on the part of Wright by the court's failure to charge on the doctrine of superseding cause.

The plaintiff's argument is confusing and unclear. The doctrine of superseding cause has applied, in the past, to those situations in which a *defendant* claims that its tortious conduct was superseded by a subsequent negligent act or those situations in which there were multiple acts of negligence. Our Supreme Court, in *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 433, 820 A.2d 258 (2003), explicitly abandoned the doctrine of superseding cause in those situations nearly one year before the commencement of the trial in this case.[15] We find the plaintiff's argument to be without merit.

[15] In *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 439 n.16, the court expressly noted that its conclusion did not necessarily affect those cases in which the defendant claims that an unforeseeable intentional tort or criminal event superseded its tortious conduct. Here, the plaintiff's complaint alleged that Wright's *negligence* was the cause of the plaintiff's injuries and losses. The plaintiff did not allege that Wright committed an intentional tort.

B

The plaintiff's second claim of instructional impropriety is that the court improperly refused to charge the jury that a defendant who seeks apportionment bears the burden of proof on that issue. We are not persuaded.

Under General Statutes § 52-572h (c), when damages are proximately caused by the negligence of more than one party, each party is liable only for his proportionate share.[16] Subsection (f) of § 52-572h prescribes the method by which the fact finder will determine the percentage of negligence attributable to a party. Specifically, subsection (f) provides in relevant part: "The jury . . . shall specify: (1) The amount of economic damages; (2) the amount of noneconomic damages; (3) any findings of fact necessary for the court to specify recoverable economic damages and recoverable noneconomic damages; (4) the percentage of negligence that proximately caused the injury, death or damage to property in relation to one hundred per cent, that is attributable to each party whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section; and (5) the percentage of such negligence attributable to the claimant."

The plaintiff is correct in his assertion that "[i]n order for apportionment to apply . . . [a] defendant must plead contributory negligence as an affirmative defense. . . . [A] defendant who seeks apportionment bears the burden of proof on that issue . . . ." (Citations omitted.) The plaintiff, however, confuses the doctrines of

---

[16] General Statutes § 52-572h (c) provides in relevant part: "In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property . . . if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages . . . ."

comparative negligence and contributory negligence. General Statutes § 52-114 provides in relevant part: "In any action to recover damages for . . . negligently causing personal injury or property damage, it shall be presumed that such person . . . who was injured or who suffered property damage was, at the time of the commission of the alleged negligent act or acts, in the exercise of reasonable care. If contributory negligence is relied upon as a defense, it shall be affirmatively pleaded by the defendant or defendants, and the burden of proving such contributory negligence shall rest upon the defendant or defendants."

The defendants in *Ramsay* v. *Camrac, Inc.*, did not assert contributory negligence as a special defense. Camrac, therefore, did not have the burden of proof with respect to the issue of apportionment, and the court properly had the jury determine the percentage of each defendant's negligence, as is required by § 52-572h (c).

The defendants in the case against the city, *Ramsay* v. *Waterbury*, on the other hand, did assert a special defense of contributory negligence.[17] Accordingly, the court gave an instruction as to the burden of proof with respect to those defendants. The court instructed the jury as follows: "The plaintiff's complaint defines the dimensions of the issues to be litigated. The right of a plaintiff to recover is limited to the allegations of his complaint. The purpose of the complaint is to limit the issues to be decided at the trial. The complaints set out the allegations, which I will relate to you in a moment. The plaintiff has the burden of proving these allegations to you by a fair preponderance of the evidence.

---

[17] Even though the plaintiff's argument with respect to the jury charge on apportionment was addressed in his appeal from the judgments in *Ramsay* v. *Camrac, Inc.*, it is necessary to include this discussion on the jury charge given in *Ramsay* v. *Waterbury* because he confuses the doctrines of comparative negligence and contributory negligence.

"The people or entities against whom the allegations are brought are the defendants. Each defendant may file an answer to the complaint denying the allegations of the complaint. And, if the defendant wishes, he may assert a special defense in his answer. Any defense—any defendant who asserts a special defense has the burden of proving the allegations contained in his special defense by a fair preponderance of the evidence.

\* \* \*

"The defendant Randy Watts has, in addition to denying the allegations against him, asserted a special defense claiming that the plaintiff, that Sylbert Ramsay was negligent in that he failed to exercise reasonable care to avoid harm to himself. And to that claim or that special defense, the plaintiff, Sylbert Ramsay, has denied the allegations, that allegation. As I have instructed you, the party making the claim has the burden of proof with respect to that claim."

We conclude that the court properly refused to give the requested charge on apportionment as to Camrac and that the instructions given to the jury in *Ramsay* v. *Waterbury* were proper.

### III

We now turn to the plaintiff's claim with respect to the second case, *Ramsay* v. *Waterbury*. The plaintiff appeals from the judgment rendered on a directed verdict in favor of Flaherty and on the jury verdict in favor of Watts, arguing that in light of the joint interrogatories submitted to the jury, the improper jury instructions given with respect to *Ramsay* v. *Camrac, Inc.*, necessarily invalidated the verdict in the case against the city. Having determined that the jury instructions given by the court in *Ramsay* v. *Camrac, Inc.*, were proper, that claim must also fail.

The judgments are affirmed.

In this opinion the other judges concurred.